| **Rivera v Rotavele El. Inc.** |
|---|
| 2024 NY Slip Op 30266(U) |
| January 22, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 161059/2013 |
| Judge: James d'Auguste |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: **Hon. James E. d'Auguste** _____ PART 55

_Justice_

-------------------------------------------------------------------X

ALAN RIVERA,

                                   Plaintiff,

                - v -

ROTAVELE ELEVATOR, INC., BOARD OF MANAGERS
200 ELEVENTH AVENUE CONDOMINIUMS, DOUGLAS
ELLIMAN PROPERTY MANAGERS,

                                   Defendants.

-------------------------------------------------------------------X

BOARD OF MANAGERS 200 ELEVENTH AVENUE
CONDOMINIUMS, DOUGLAS ELLIMAN PROPERTY
MANAGERS

                                   Plaintiffs,

                -against-

ZMK GROUP, INC., ROTAVELE ELEVATOR, INC.,

                                   Defendants.

-------------------------------------------------------------------X

BOARD OF MANAGERS 200 ELEVENTH AVENUE
CONDOMINIUMS, DOUGLAS ELLIMAN PROPERTY
MANAGERS,

                                   Plaintiffs,

                -against-

ANDREW CONRAD, HAY LYNN COHEN,

                                   Defendants.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 161059/2013 |
| MOTION DATE | 08/24/2020, 04/23/2021 |
| MOTION SEQ. NO. | 007 008 |

### DECISION + ORDER ON MOTION

Third-Party
Index No. 595413/2016

Second Third-Party
Index No. 595340/2017

The following e-filed documents, listed by NYSCEF document number (Motion 007) 168, 169, 170, 171,
172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192,
193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214,
215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 228, 229, 230, 234, 235, 236, 237, 238, 239,
240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260,
261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271, 272, 273, 274, 275, 276, 277, 278, 281, 282, 283,

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No.  007 008**

**Page 1 of 39**

1 of 39

284, 285, 286, 287, 288, 289, 290, 291, 292, 295, 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 310, 311, 312, 313, 314, 315, 316, 338, 339, 340, 341

were read on this motion to/for _____ SUMMARY JUDGMENT _____.

The following e-filed documents, listed by NYSCEF document number (Motion 008) 317, 318, 319, 320, 321, 322, 323, 324, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 343, 344, 345, 346, 347, 349, 350

were read on this motion to/for _____ SUMMARY JUDGMENT _____.

In this action, plaintiff Alan Rivera (plaintiff) alleges that on November 26, 2012, he was injured on the ground floor of 200 Eleventh Avenue in New York, New York, when he was struck by a freight elevator's stainless-steel door/gate.

Motion sequence numbers 007 and 008 have been consolidated for disposition.

In motion sequence number 007, plaintiff moves, pursuant to CPLR 3126, to strike the answer of second third-party defendants Andrew Conrad (Conrad) and Hay Lynn Cohen (Cohen) for their alleged willful failure to comply with Court discovery orders. Plaintiff also moves, pursuant to CPLR 3212, for an order granting summary judgment against the defendant/third-party defendant Rotavele Elevator, Inc. (Rotavele) and defendants/third party plaintiffs/second third-party plaintiffs Board of Managers 200 Eleventh Avenue Condominiums (Board of Managers) and Douglas Elliman Property Managers (Douglas Elliman) on the issue of liability.

Third-party defendant ZMK Group, Inc. (ZMK) cross-moves, pursuant to CPLR 3212 and/or 3211 (a) (7), for an order granting it summary judgment and dismissing plaintiff's complaint as well as all third-party claims.

Board of Managers and Douglas Elliman cross-move, pursuant to CPLR 3212, for an order granting summary judgment and dismissing plaintiff's complaint. Board of Managers and Douglas Elliman also move against ZMK for contractual indemnification, common law indemnification, and breach of contract for failing to procure insurance.

161059/2013   RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.                     Page 2 of 39
Motion No. 007 008

2 of 39

Rotavele cross-moves, pursuant to CPLR 3212, for an order granting summary judgment dismissing plaintiff's complaint together with all third-party claims.

In motion sequence number 008, Conrad and Cohen move, pursuant to CPLR 3212, for an order granting them summary judgment in the second third-party action and dismissing all claims as against them for contractual indemnification, common law indemnification, contribution, and breach of contract for failure to procure insurance.

## FACTUAL ALLEGATIONS

### Plaintiff's Deposition

Plaintiff testified that on November 26, 2012, he was allegedly involved in an accident while he was working for ZMK as a site supervisor at 200 Eleventh Avenue. His duties at ZMK included running projects, dealing with contractors, and dictating what contractors do. Plaintiff reported to "Zach" who was the owner of ZMK. His main boss was Tom Levy (Levy), the vice-president. At the premises, his work included running a job for brand new kitchens, closets, doors, alarm systems and flooring. He assisted with framing and sheet rocking and recalls that the work was on the eighth and ninth floor of the building in an apartment for a client named "Andrew."

The building had one passenger elevator and one freight elevator. The freight elevator was used to move vehicles and remove garbage for contractors and to bring up materials for construction projects. He recalls a superintendent named Andrew Slapar (Slapar) instructing him that the passenger elevators were for residential clients only and that ZMK was only allowed to use the freight elevator whenever he needed to utilize it. The superintendent told plaintiff to push a button on the freight elevator, as well as the floor to which he was traveling, and was the only person from whom plaintiff received instructions regarding the freight elevator.

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No.  007 008**

Page 3 of 39

ZMK was hired to conduct work for an interior renovation of the apartment. Besides speaking with the superintendent, plaintiff also had dealings with the interior decorators at the building. The building did not provide a designated operator for the elevator. The superintendent allowed plaintiff to run the elevator with other contractors. The building did not provide him with any written procedures or protocols about using the freight elevator.

Once plaintiff was aware someone was on-site he would push a button located outside of the elevator which would bring the elevator up to the eighth floor. He recalls the elevator had stainless steel doors from the top and bottom which met in the middle. Once the doors would close, a mesh metal gate would come down. He does not recall hearing a bell or alarm when the doors opened.

Plaintiff's accident allegedly involved getting struck by the mesh metal gate of the elevator door. He recalls walking into the exit part of the elevator with a co-worker named Danny who was to his right. He blacked out after the accident. He recalls that Danny was also allegedly struck by the elevator doors and had a golf ball knot on his forehead. Danny allegedly told him that the elevator fell on his head. Plaintiff recalls riding the elevator several times before the accident. He recalls Levy being present and telling him that the elevator struck him on the midsection top part of his head. Plaintiff testified that there were no beeping sounds before the elevator closed.

Prior to his accident, plaintiff noticed that the elevator doors and metal gate were closing too fast. He allegedly brought this to the attention of the superintendent. Plaintiff also testified that he reported that the doors were not closing, especially on the entry side. He recalls the subject elevator being shut down four times prior to his accident because there were issues with

**161059/2013   RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**                              **Page 4 of 39**
**Motion No. 007 008**

[* 4]                                                              4 of 39

it. Plaintiff was allegedly told by the superintendent that someone was hurt before and that they would have to fix the lack of warning sound.

**Andrej Slapar Deposition**

Slapar testified that he is employed by 200 Eleventh Avenue Condominium as a resident manager and worked on-site. In November of 2012, Slapar was aware of construction work occuring on the eighth floor of the premises. Slapar would allow access to the unit and helped with questions throughout the process. His supervisor was David Lipsik who was a property manager.

Slapar recalls plaintiff, who was from ZMK, and observing ZMK utilizing the freight elevator to bring construction debris or garbage down from apartment 8N on a regular basis. Slapar instructed plaintiff on how to use the freight elevators. He recalls allegedly telling plaintiff to block the sensor so that the door stayed open. No instructions were provided about exiting the freight elevator on the ground floor.

Slapar believes that he was at the building on November 26, 2012, the date of plaintiff's accident. He recalls plaintiff allegedly telling him that an elevator door hit him. After he was alerted of plaintiff's accident, Slapar checked a video to see what occurred, drafted an incident report, and submitted it to Douglas Elliman.

Prior to the accident, Slapar asserts he did not learn of any complaints related to the exiting doors closing on anyone. If there was a problem which was not part of the elevator's usual maintenance agreement, Slapar or the concierge on duty would call the elevator servicing company. Slapar did not recall the specifics, but reviewed an elevator call log which included an entry from November 13, 2012, which states that the freight elevator door would not completely

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No. 007 008**

**Page 5 of 39**

5 of 39

close. The entrance door had a curtain sensor on each side of the door where the exit door has a sensor on the inside of the door.

Slapar testified that no one told him that there was an attendant required for the freight elevator. Douglas Elliman took care of the administrative tasks. Prior to November 26, 2012, he allegedly did not know of any issues with the curtain sensors at the exit door of the freight elevator. He was not aware that freight elevators in the City of New York needed a designated operator and recalls that while construction was on going for a period of four or five months, there was someone sitting in the elevator operating it.

Slapar maintains that when a person or an object was inside the elevator and in close proximity to the doors, the doors would stay open. The sensor was set up so that if a person was approaching and engaged a sensor, it would prevent the door and gate from closing. He believes that the elevator should stay open for twenty seconds with nothing blocking the sensor, and a loud beep would sound when the door would start to close. He had not made a complaint to Rotavele regarding the beeping sound or sensors or call anyone from Rotavele to advise them of the plaintiff's incident.

Following the incident, Slapar allegedly checked the elevator and saw the alarm and sensors were working properly. Rotavele was not called to make any repairs as a result of the incident. The elevator did not have a 24-hour attendant. Slapar allegedly provided instructions to plaintiff on how to operate the elevator.

**Andrew Conrad's Deposition**

Andrew Conrad testified that he owned a residence at 200 Eleventh Avenue, apartment 8-N, from June of 2012 through 2013. He recalls hiring ZMK as a contractor, but was not sure if there was a contract. There was an estimate or work order dated September 18 2012, with

**161059/2013   RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No.  007 008**

**Page 6 of 39**

someone in his business office's signature, as it was not his actual signature. The business managers in his office had the authority to sign on his behalf.

Conrad maintains that ZMK's work at the site included kitchen and bathroom work. He believes that the work was completed. He asserts that neither he, his wife Lynn Conrad, nor anyone under his direction or authority supervised and controlled the work performed by ZMK.

Conrad asserts he does not have any knowledge of the accident other than what his attorney told him. The elevator where the accident took place was a large freight-type elevator used to raise and lower cars in and out of private garages located in the actual apartments. He did not see anyone operating the elevator other than people who may have been owners of the building. There was no attendant in the freight elevator. He maintains that there was a proximity sensor installed in his car which alerted the elevator that his car was present. Conrad believes that outside of the elevator there was a button in the elevator which could be called. He recalls a handyman or building manager named Andrew.

**John Mallia's Deposition**

John Mallia (Mallia) testified that he is a supervisor for Rotavele. Mallia was not present at the site at 200 Eleventh Avenue on November 26, 2012. If Rotavele received a call, a route mechanic would respond. General maintenance visits would take place on the property on a monthly basis. The mechanic would check in with the building and would direct their communication with the office. The building engineer would tell the mechanic what the problem was.

Mallia maintains that Rotavele allegedly installed the freight elevator. An "electric eye" sensor would prevent the doors from closing. A curtain device was a black strip inside of the elevator door and if anything protruded between the doors, it would reopen. There were no

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No. 007 008**

**Page 7 of 39**

7 of 39

[* 7]

settings which controlled the safety curtain. Prior to November 26, 2012, there were allegedly no problems with sounds, which were generated prior to the doors closing.

Mallia first learned of plaintiff's accident a couple of weeks after it occurred. There would be no one present from Rotavele when the inspection of the elevator was conducted by either the City of New York or a third party. Mallia did not know if his company had any dealings with ZMK. Calls regarding the elevator would come from someone in the building. Mallia testified that he observed a video of the accident in which a man was walking towards the inside of the elevator and the exit side gate came down and struck him in the head. He maintains that the beam was allegedly not triggered prior to the gate striking the man on the head because he was entering through the exit side of the elevator.

Rotavele had repaired the entry to the doors on November 13, 2012, because they would not close. Mallia does not believe the problem on November 13, 2012, had anything to do with the plaintiff's accident. He asserts that while utilizing the entrance door side of the elevator, the electric eye was tripped by the gate. If entering from the street side of the elevator, a person would reach the gate doors of the elevator before getting to the electric eye. Rotavele allegedly did not have contact with anyone conducting renovations on the building.

### Zachary Kaplan's Deposition

Kaplan testified that he is a general contractor. ZMK issued a purchase order for work to be conducted at the Conrad residence at 200 Eleventh Avenue, apartment 8N. Neither Conrad nor Cohen told the workers how to conduct their jobs. Kaplan was aware that his workers were told to use the freight elevator in the back of the building. He believes that the superintendent of the building controlled the elevator and provided the workers with access.

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No.  007 008**

**Page 8 of 39**

[* 8]

8 of 39

Kaplan maintains that ZMK's work did not involve the elevator itself or its doors. The work was limited to the interior of the apartment. He reviewed an indemnification agreement which he did not sign. He contends that the signature on the indemnification agreement was a fraudulent signature and that he did not provide permission to any workers, foreman or supervisors to sign on his behalf. Kaplan has an unsigned copy of this document in his file. He believes that someone from the building signed the document. Kaplan believes that the handwriting allegedly matches the accident report.

Kaplan did not receive a copy of the incident or accident report. He never received any complaints from plaintiff. Kaplan recalls plaintiff telling him about his accident and that the elevator struck him in the back a few days after the accident while the elevator was on the ground level.

### Affidavit of Patrick A. Carrajat

Patrick A. Carrajat (Carrajat) is an elevator consultant. Carrajat states that on November 26, 2012, at approximately 11:30 a.m., the plaintiff, in the course of his employment, was injured while entering an elevator at 200 Eleventh Avenue. The subject elevator is a combination freight elevator and garage elevator. It is used to transport all manner of materials and serves as a device to take the cars of individual owners of units to their apartments. The elevator is fully automatic and has vertically bi-parting doors composed of two panels. The upper and lower panels close together after the mesh type gate closes.

Carrajat states that as plaintiff and a co-worker were entering the elevator, the gate came down without a warning signal and struck both men. He states that he has reviewed the public records in reference to the subject elevator. Elevators are subject to two types of inspections, a routine and annual "Category One" inspection and test. Carrajat states that the subject elevator

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No. 007 008**

Page 9 of 39

[* 9]

was issued a violation on June 7, 2012, as a result of a routine inspection by an Elevator Division inspector. It was also found "Unacceptable" as a result of a Category One inspection on October 17, 2012.

Carrajat maintains that a two-year old elevator should not fail repeated inspections. He states that, in addition, the records reveal that the accident was never reported to the Elevator Division, as required by the Building Laws of the City of New York. When an accident is reported, the Elevator Division dispatches an inspector to perform a safety inspection before the elevator can be returned to service. He asserts that the failure to report the accident has deprived plaintiff of any benefit that may have accrued from a contemporaneous inspection by a neutral party.

Carrajat alleges that to a reasonable degree of mechanical certainty that plaintiff was using the elevator in a proper manner and did not cause or contribute to the accident or his injuries, and that the defendants were in shared exclusive control of the elevator at the time of the accident. Carrajat states that Rotavele, by virtue of their exclusive service contract, and the remaining property defendants, by their management of the property, shared exclusivity. He concludes that a power-driven gate does not strike a person in the normal operation of the device absent negligence in maintenance.

**Affidavit of Patrick McPartland**

Patrick McPartland (McPartland) submits an affidavit dated February 1, 2021. McPartland states that he is a consulting engineer in the field of vertical transportation devices. He maintains the subject elevator had a designated entrance side at the street level where resident's cars would drive into the elevator cab to be able to go up to their specific apartment garage space. There was a separate exit side at the other side of the cab, directly opposite to the

**161059/2013 RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
Motion No. 007 008

**Page 10 of 39**

10 of 39

entrance, where cars would drive out from the elevator after coming down from their garage space.

McPartland alleges that plaintiff improperly entered the elevator through a set of doors that were designed and intended for use only as an exit. Plaintiff had not engaged the beams of the gate/door reopening device before the elevator gate made contact. The gate worked as it was designed and intended and reopened as plaintiff made contact with the gate itself and the light beams were interrupted. The elevator installation was code compliant and approved by the City of New York. He concludes that there was no act or omission by Rotavele which caused or contributed to the incident.

**Affidavit of Dennis J. Ryan**

Denis J. Ryan (Ryan) submits an affidavit dated November 18, 2020. Ryan states that he is a board-certified forensic document examiner and the founder and principal of Applied Forensics, LLC. Ryan asserts that based upon his review of the exemplar signatures of Kaplan and his comparison of the signatures to a purported indemnification agreement disclosed by Board of Managers, it is highly probable, and virtually certain, that the signature set forth on the purported indemnification agreement is not the signature of Kaplan.

**Affidavit of Jeffrey H. Luber**

Jeffrey H. Luber (Luber) submits an affidavit dated March 9, 2021. Luber is a Diplomate of the American Board of Forensic Examiners and is an expert in forensic document examination. Luber contends that the findings of Ryan fail to explain the basis for his conclusions. Luber maintains that he has examined the known signatures of Kaplan and the questioned signature on the indemnification agreement and concludes that there is not enough available evidence basis for Ryan to reach his conclusions that the signature is not genuine.

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
Motion No. 007 008

## DISCUSSION

### Motion Sequence 007

In motion sequence number 007, plaintiff first moves, pursuant to CPLR 3126, to strike the answer of second third-party defendants Conrad and Cohen for allegedly willfully failing to comply with Court discovery orders. Plaintiff contends that he is entitled to this relief because they failed to produce witnesses for depositions pursuant to CPLR 3126.

In a stipulation dated November 20, 2020, and entered into between counsel for plaintiff and Conrad and Cohen, it was agreed "that the portion of plaintiff's Motion for Summary Judgment that seeks to strike the answer of the second third-party defendants, currently returnable November 30, 2020, is hereby withdrawn on consent" (NYSCEF Doc. No. 227). Therefore, the part of the motion, pursuant to CPLR 3126 and to strike the answer of second third-party defendants, Conrad and Cohen is denied as moot.

### Summary Judgment Standard

Plaintiff also moves for summary judgment as to his claims of a violation of Labor Law §§ 240 (1), 241 (6), and 200. A party moving for summary judgment must demonstrate its defense or cause of action sufficiently to eliminate any material issues of fact. *Ryan v Trustees of Columbia Univ. in the City of N.Y, Inc.*, 96 AD3d 551, 553 (1st Dept 2012). Once this showing has been made, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form which is sufficient to establish the existence of a material issue of fact. *Ostrov v Rozbruch*, 91 AD3d 147, 152 (1st Dept 2012).

### Labor Law Section 240 (1)

Plaintiff contends that summary judgment must be granted as to his claim of a violation of Labor Law § 240 (1).

**161059/2013   RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No.  007 008**

**Page 12 of 39**

Labor Law § 240 (1) provides in part:

"[a]ll contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

The Appellate Division, First Department, has held that "[t]he failure to provide safety devices constitutes a per se violation of the statute and subjects owners and contractors to absolute liability, as a matter of law, for any injuries that result from such failure since workers are scarcely in a position to protect themselves from accident." *Cherry v Time Warner, Inc.*, 66 AD3d 233, 235 (1st Dept 2009) (internal quotation marks and citations omitted).

The Court of Appeals has held that "[n]ot every worker who falls at a construction site, and not every object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240 (1). Rather, liability is contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein." *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 (2001); *citing Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 (1993).

Plaintiff argues that his accident is the type of accident which Labor Law § 240 (1) was enacted to prevent. Plaintiff contends that he was performing construction-related work while using a freight elevator. He maintains that the depositions demonstrate that he was injured as a result of the freight elevator's gate striking his head from above. Plaintiff maintains that the inadequately secured freight elevator gate fell on him because of the failure to use adequate safety devices, it was not functioning correctly, and required repair. Plaintiff argues that he was

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
Motion No.  007 008

Page 13 of 39

13 of 39

not provided with any protective safety equipment to protect him from this overhead hazard, which fell and struck plaintiff.

In opposition to plaintiff's motion and in support of their cross-motion for summary judgment, Board of Managers and Douglas Elliman contend that plaintiff has failed to establish that the work involved a significant inherent risk attributable to an elevation differential, that the injury was the foreseeable consequence of a failure to provide proper protective devices of the type enumerated in the statute, or that the freight elevator door, which was never in the process of falling, constituted a load being hoisted or that required securing within the contemplation of the statute. They maintain that it is undisputed that plaintiff was not working at an elevated height or near an elevation-related risk but was moving garbage, an activity which was completely unrelated to elevation or the freight elevator.

"[F]or section 240 (1) to apply, a plaintiff must show more than simply that an object fell causing injury to a worker. A plaintiff must show that the object fell, while being hoisted or secured, because of the absence or inadequacy of a safety device of the kind enumerated in the statute." *Narducci*, 96 NY2d at 268.

Here, plaintiff has failed to meet his burden to demonstrate that the elevator door fell because of the absence or an inadequacy of a safety device. Plaintiff fails to demonstrate how safety devices discussed in Labor Law § 240 (1), specifically scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, or ropes, would have been applicable to prevent the accident or provide proper protection to plaintiff as the testimony suggests that plaintiff was struck by a descending elevator door which then ascended after striking him.

Furthermore, plaintiff has also failed to demonstrate that the door was a load which required securing as per the statute or that plaintiff's work involved a significant inherent risk

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No.  007 008**

Page 14 of 39

[* 14]                                    14 of 39

attributable to an elevation differential. *See Lanzilotta v Lizby Assocs.*, 216 AD2d 229, 230 (1st Dept 1995) (holding that the Court properly found that Labor Law § 240 (1) is inapplicable to the accident when the elevator doors shut on plaintiff's head).

Therefore, as Labor Law § 240 (1) is inapplicable to plaintiff's accident as plaintiff fails to demonstrate that the door fell, while being hoisted or secured, or that the accident occurred because of the absence of, or due to an inadequacy of a safety device, the part of plaintiff's motion seeking summary judgment as to Labor Law § 240 (1) must be denied. Furthermore, the part of Board of Managers' and Douglas Elliman's cross-motion seeking to dismiss the allegations of a violation of Labor Law § 240 (1) must be granted.

Also in opposition, ZMK argues that plaintiff's allegation of a Labor Law § 240 (1) violation must be dismissed as against it. ZMK contends that plaintiff neither fell nor was he struck by a falling object, that plaintiff was struck on the head as he walked the wrong way into the exit of an elevator and the mechanical elevator doors began to close, and that there is no testimony to suggest that the elevator door "fell" or that its operation, and thus its descent, were caused by the force of gravity. However, the Court notes that plaintiff has not named ZMK as a direct defendant, nor has he filed any causes of action against this third-party defendant. Therefore, no Labor Law violations have been asserted against ZMK and the Court will not address such claims as to ZMK. *See Badzio v East 68th St. Tenants Corp.*, 2020 NY Slip op 32885 (U), * 58-59 (Sup Ct, NY County, 2020).

In opposition to plaintiff's motion, and in support of its own cross-motion, Rotavele contends that plaintiff's claims as against it pursuant to the Labor Law must fail because Rotavele was not an owner or a general contractor within the meaning of the Labor Law. It argues that plaintiff's accident did not involve a gravity-related risk which was required by the

**161059/2013 RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No. 007 008**

**Page 15 of 39**

15 of 39

statute and that the video of the incident clearly shows that the gates did not fall due to being adequately secured, and actually closed under power and struck him, and then reopened.

"Labor Law §§ 240 (1) and 241 (6) apply to owners, contractors, and their agents." *See Holifield v Seraphim, LLC*, 92 AD3d 841, 842 (2012) (citation omitted). "Labor Law §§ 240 (1) and 241 (6) impose absolute liability on contractors and owners and their agents for worker injuries on construction sites. . . . To hold a defendant liable under the Labor Law as a statutory agent of either the owner or the general contractor, it must be shown that the defendant had the authority to supervise and control the injury-producing work. The determinative factor is whether the defendant had the right to exercise control over the work, not whether it actually exercised that right." *Santos v Condo 124 LLC*, 161 AD3d 650, 653 (1st Dept 2018) (citations and internal quotation marks omitted); *see also Perez v 347 Lorimer*, 84 AD3d 911, 912 (2d Dept 2011) (holding "[a] party is deemed to be an agent of an owner or general contractor under the Labor Law when it has supervisory control and authority over the work being done at the location a plaintiff is injured and must have the authority to control the activity bringing about the injury so as to enable it to avoid or correct the unsafe condition." [citations and internal quotation marks omitted]). Furthermore, "[o]nly upon obtaining the authority to supervise and control does the third party fall within the class of those having nondelegable liability as an "agent" under sections 240 and 241." *Russin v Lois N. Picciano & Son,* 54 NY2d 311, 318 (1981).

Here, plaintiff fails to demonstrate that Rotavele had any supervisory control or authority over plaintiff's work. Furthermore, Mallia testified that Rotavele did not have contact with anyone conducting renovations on the building. Therefore, as plaintiff fails to show that Rotavele had the right to exercise control over the work, the part of plaintiff's complaint seeking

**161059/2013 RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No. 007 008**

**Page 16 of 39**

Labor Law §§ 240 (1) and 241 (6) violations against Rotavele must be dismissed. Furthermore, the part of Rotavele's cross-motion seeking summary judgement as to the violations of Labor Law §§ 240 (1) and 241 (6) must be granted.

**Labor Law Section 241 (6)**

Plaintiff contends that summary judgment must be granted as against the defendants as to his allegation that Labor Law § 241 (6) was violated.

Labor Law § 241 (6) provides, in pertinent part:

> "[a]ll contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
> * * *
> (6) All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places . . . ."

Labor Law § 241 (6) imposes a nondelegable duty on owners and contractors to provide reasonable and adequate protection for workers and to comply with specific safety rules which have been set forth by the Commissioner of the Department of Labor. *St. Louis v. Town of N. Elba*, 16 NY3d 411, 413 (2011). In order to demonstrate liability pursuant to Labor Law § 241 (6), it must be shown that the defendant violated a specific, applicable regulation of the Industrial Code, rather than a provision containing only generalized requirements. *Nostrom v A.W. Chesterton Co.*, 15 NY3d 502, 507 (2011).

**Industrial Code Section 23-1.7 (a) (1)**

Plaintiff contends that defendants violated section 23-1.7 (a) (1). Section 23-1.7 (a) provides:

**161059/2013   RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No. 007 008**

**Page 17 of 39**

"(a) Overhead hazards.
(1) Every place where persons are required to work or pass that is normally exposed to falling material or objects shall be provided with suitable overhead protection. Such overhead protection shall consist of tightly laid sound planks at least two inches thick full size, tightly laid three-quarter inch exterior grade plywood or other material of equivalent strength. Such overhead protection shall be provided with a supporting structure capable of supporting a loading of 100 pounds per square foot."

Industrial Code Rule § 23-1.7 (a) (1) sets forth specific standards sufficient to sustain a cause of action under Labor Law § 241 (6). *See Zervos v City of New York*, 8 AD3d 477, 480 (2d Dept 2004).

Plaintiff contends that section 23-1.7 (a) (1) is applicable to the present case because this section provides requirements that where persons are required to work or pass in an area subject to falling material or objects, suitable overhead protection should be provided. Plaintiff contends that no such protection was provided to plaintiff when he used the building's freight elevator to transport debris.

In opposition to plaintiff's motion, and in support of their cross-motion, Board of Managers and Douglas Elliman contend that the elevator door at issue was not a falling object as it was closing at a mechanically slow rate of speed and not due to the force of gravity.

Here, plaintiff was exiting an elevator when his head was injured. Plaintiff fails to demonstrate how overhead protection consisting of tightly laid sound planks at least two inches thick full size, tightly laid three-quarter inch exterior grade plywood or other material of equivalent strength, could have been utilized in the elevator. Therefore, as this section of the Industrial Code is not applicable, the part of plaintiff's complaint alleging a violation of Industrial Code section 23-1.7 (a) (1) must be dismissed. Furthermore, the part of Board of

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No. 007 008**

Page 18 of 39

Managers' and Douglas Elliman's cross-motion seeking summary judgment dismissing this section of the Industrial Code must be granted.

**Industrial Code Section 23–1.8 (c) (1)**

Plaintiff argues that defendants violated section 23-1.8 (c) (1) of the Industrial Code. Section 23-1.8 (c) (1) provides:

> "(c) Protective apparel. (1) Head protection. Every person required to work or pass within any area where there is a danger of being struck by falling objects or materials or where the hazard of head bumping exists shall be provided with and shall be required to wear an approved safety hat. Such safety hats shall be provided with liners during work in areas or at such times where the temperature is below 55 degrees Fahrenheit."

A violation of Industrial Code section 23-1.8 (c) (1) has been held to be sufficiently specific to predicate a violation pursuant to Labor Law § 241 (6). *See Singh v 106-108 Bayard St. Corp.*, 200 AD2d 31, 31 (1st Dept 2002).

Plaintiff contends that Section 23-1.8 (c) (1) was violated because plaintiff was not wearing an approved safety hat at the time of his accident, defendants did not provide and/or require plaintiff to wear such a safety hat, and because plaintiff's head was struck by the freight elevator door/gate.

In opposition and in support of their cross-motion, Board of Managers and Douglas Elliman contend that plaintiff was not working in a position which required safety hats.

Here, a question of fact exists as to whether protective apparel should have been provided as it remains unclear if plaintiff was working in an area where there was a danger of falling objects or where head bumping existed. Therefore, the Court declines to grant summary judgment as to this section of the Industrial Code to either party.

**161059/2013   RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No.  007 008**

**Page 19 of 39**

## Industrial Code Section 23-2.1 (b)

Plaintiff argues that defendants violated Section 23-2.1 (b) of the Industrial Code.

Section 23–2.1 (b) provides:

> "(b) Disposal of debris. Debris shall be handled and disposed of by methods that will not endanger any person employed in the area of such disposal or any person lawfully frequenting such area."

Industrial Code Rule § 23-2.1 (b) has been found to be sufficiently specific to support a Labor Law § 241 (6) cause of action. *See Dipalma v State of New York*, 90 AD3d 1659, 1661 (4th Dept 2011).

Here, plaintiff was injured while returning from transporting debris for disposal. It remains unclear to the Court if the method of disposing the debris, specifically utilizing a freight elevator without an operator, was proper or if it endangered the plaintiff as he was allegedly injured while entering back into the elevator. Therefore, as a question of fact exists as to whether Section 23–2.1 (b) was violated, the Court denies this part of plaintiff's motion, and Board of Managers' and Douglas Elliman's cross-motion for summary judgment.

## Industrial Code Section 23-7.3 (e)

Plaintiff contends that defendants violated Section 23-7.3 (e) of the Industrial Code.

Section 23-7.3 (e) provides:

> "(e) Elevator operators. Such elevator cars shall be operated only by competent, trained, designated persons."

Plaintiff contends that Section 23-7.3 (e) was violated because defendants failed to provide a competent, trained and designated 24-hour elevator operator at the freight elevator. Plaintiff asserts that defendants were required to equip the freight elevator with a 24-hour elevator operator pursuant to the New York City Department of Buildings application sign on

**161059/2013 RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
Motion No. 007 008

Page 20 of 39

20 of 39

sheet. Plaintiff alleges that the freight elevator was not operated by an operator or attendant when his accident occurred.

As Section 23-7.3 (e) only requires that an elevator shall be operated by competent, trained, designated persons, it is only a general statement of a common law requirement and is insufficient to establish a duty pursuant to the Labor Law § 241 (6). *See Bruno v Mall 1-Bay Plaza, LLC*, 2019 NY Slip Op 33486 (U), * 15 (Sup Ct, NY County, 2019). Therefore, the part of plaintiff's complaint alleging a violation of Industrial Code Section 23-7.3 (e) must be dismissed.

## Industrial Code Section 23-7.3 (f)

Plaintiff contends that defendants violated Section 23-7.3 (f) which provides:

"(f) Testing. Prior to the initial use of any temporary elevator installed in a permanent hoistway, such elevator shall be tested by a designated person. Such testing shall be in accordance with the following requirements:

(1) The car of such elevator shall be loaded to its rated capacity and operated at its rated speed to the upper and lower limits of its travel at least twice in order to test the operation of the upper and lower automatic limit devices as well as the operation of the hoisting machine brake at various levels of the hoistway.

(2) With the rated load in place, the car safeties shall be actuated by tripping the governor by hand while the car is traveling downward at rated speed.

(3) Such test shall be repeated with no load at least once every month while the elevator is in use by operating at a slow speed and tripping the governor by hand.

(4) A written report of each test shall be made and signed by the designated person making such tests. Such reports shall include the dates, test loads and speeds involved as well as the test results. Such written reports shall be kept in a log book on the job site available for examination by the commissioner."

Plaintiff argues that defendants were aware that plaintiff was using the freight elevator and failed to ensure that the controller function and doors/gate were safe, and permitted the ongoing presence of a defectively installed and/or manufactured elevator, devoid of all safety

**161059/2013 RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No. 007 008**

**Page 21 of 39**

features, into use or service. Plaintiff contends that prior to his accident, the freight elevator was in constant need of repairs and that Rotavele maintained both the passenger and freight elevators for the building, pursuant to a maintenance contract, which included monthly inspections.

In opposition and in support of their cross-motion, Board of Managers and Douglas Elliman assert that this section of the Industrial Code is not applicable because the freight elevator was permanent and not temporary.

As Section 23-7.3 (f) applies to temporary elevators installed in a permanent hoistway and as the subject freight elevator was not a temporary elevator, Section 23-7.3 (f) is inapplicable. Therefore, the part of plaintiff's motion seeking summary judgment as to Industrial Code Section 23-7.3 (f) must be denied and the part of Board of Managers' and Douglas Elliman's cross-motion dismissing such section of the Industrial Code must be granted.

**Labor Law Section 200**

Plaintiff contends that summary judgment must be granted as to defendants' cause of action for a violation of Labor Law § 200.

Labor Law § 200 "is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work." *Singh v Black Diamonds LLC*, 24 AD3d 138, 139 (1st Dept 2005) (citations omitted).

Labor Law § 200 (1) provides in part:

"[a]ll places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons . . . ."

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
Motion No. 007 008

**Page 22 of 39**

Liability pursuant to Labor Law § 200 may be based either upon the means and method by which the work is performed, or actual or constructive notice of a dangerous condition inherent in the premises. When the accident arises from a dangerous condition on the property, the proponent of a Labor Law § 200 claim must demonstrate that the defendant created or had actual or constructive notice of the allegedly unsafe condition that caused the accident. *See Murphy v Columbia Univ.*, 4 AD3d 200, 202 (1st Dept 2004).

In order to find an owner or his agent liable under Labor Law § 200 for defects or dangers arising from a subcontractor's method or manner, it must be shown that the owner or agent exercised some supervisory control over the injury-producing work. *See Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 (1998); *Jackson v Hunter Roberts Constr., L.L.C.*, 205 AD3d 542, 543 (1st Dept 2022). "General supervisory authority is insufficient to constitute supervisory control; it must be demonstrated that the contractor controlled the manner in which the plaintiff performed his or her work, i.e., how the injury-producing work was performed." *Hughes v Tishman Constr. Corp.*, 40 AD3d 305, 306 (1st Dept 2007); *Suconota v Knickerbocker Props., LLC*, 116 AD3d 508, 508 (1st Dept 2014); *see also Mutadir v 80-90 Maiden Lane Del LLC*, 110 AD3d 641, 643 (1st Dept 2013).

Plaintiff alleges that defendants created a dangerous condition by failing to maintain and provide a safe work area. He argues that defendants' failure to provide reasonable and adequate protection to the safety of workers and a freight elevator operator required by the New York City Department of Buildings, led to plaintiff's accident. Plaintiff maintains that a New York City Department of Buildings application sign-off sheet provided that a 24-hour attendant should be present at the freight elevator at the aforesaid location and that testimony revealed that the building had an attendant operating the freight elevator for approximately four to five months

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
Motion No.  007 008

**Page 23 of 39**

23 of 39

[* 23]

until November of 2010. He contends that the testimony further revealed that Board of Managers was informed, multiple times, that the freight elevator required an operator because it was not a passenger elevator.

Plaintiff argues that he testified that he operated the freight elevator himself, that the building never provided a designated operator for the freight elevator, that the building never presented him with any written procedure or protocols surrounding the use of the freight elevator, and that prior to removing garbage from the building's eighth floor, he would ask the building staff for permission first because tenants also used the freight elevator. Plaintiff asserts that the freight elevator was in constant need of repairs. Plaintiff contends that in 2011, there were seven times which the freight elevator was not working properly, as well as three times in the first few months of 2012. Plaintiff alleges that within the last six months leading up to his accident, Rotavele was contacted by building staff approximately six times because the freight elevator doors were not opening properly or had to be repaired for water damage. He maintains that additionally, on November 13, 2012, nearly two weeks before plaintiff's accident, the freight elevator doors would not close properly and defendant Rotavele was contacted to repair the issue.

Plaintiff argues that defendants had notice of the freight elevator's condition and that if the freight elevator's detector device was functioning properly, plaintiff's accident would not have occurred. He claims argues that defendants owed him a duty to correct any unsafe condition that they created, as well as any unsafe condition known to them or their employees. Further, defendants owed a duty to conduct reasonable inspections of the freight elevator.

In opposition to plaintiff's motion and in support of their cross-motion, Board of Managers and Douglas Elliman contend that summary judgment should be granted as plaintiff

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
Motion No. 007 008

**Page 24 of 39**

[* 24]

24 of 39

was the sole proximate cause of his injury and because plaintiff has failed to demonstrate that these defendants controlled the means and methods of plaintiff's work as they did not have the authority to supervise or control the performance of the work. They argue that ZMK never had any communications with these defendants regarding the renovation and that they did not control the means or methods of plaintiff's work.

With regards to notice, defendants contend that plaintiff has failed to demonstrate that Board of Managers and Douglas Elliman had notice of the dangerous condition of the elevator. They argue that while plaintiff points to the fact that the freight elevators were periodically in need of repairs and maintenance, plaintiff has failed to show any connection between any previous maintenance and plaintiff's accident. They maintain that after watching the video of the accident, Mallia confirmed that the elevator door was working properly at the time of the accident, and that plaintiff's injuries were the result of him failing to use the proper entrance into the elevator.

Here, a question of fact exists as to whether defendants had notice of the condition of the elevator which may have contributed to plaintiff's accident. Slapar, 200 Eleventh Avenue Condominium's resident manager, testified that prior to plaintiff's accident, he did not learn of any complaints related to the exiting doors closing on anyone. However, plaintiff's testimony suggests that defendants may have been on notice regarding problematic conditions with the doors of the subject freight elevator. Plaintiff testified:

> "Q. Prior to your accident, did you ever notice anything defective or wrong with regard to the elevator doors that brings us here today?
> A. Doors were too fast closing. I brought it to Andre the super's attention. I think that's his name.
> Q. When you say the doors, do you mean the metal gate that comes down, or the doors that go from side to side and close in the center?

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**                     **Page 25 of 39**
**Motion No. 007 008**

[* 25]                                          25 of 39

A. I think both. At one time, they closed too fast. He ordered the maintenance crew to come and try to fix it. He did.
Q. Who did you speak to from 200 Eleventh?
A. Andre. Is that his name, Andre? He's the building super. He's still there. I mean the last time I went for inspection.
Q. When did you tell him, a day before your accident the morning of, something else?
A. We've had conversations because he needed a desk done. It was conversations that would come up. He would allow me as site supervisor to use the regular elevator, which was nice of him.
Q. I'm talking about the elevator that was for the car lift. I'm not taking about the other elevator.
A. He would shut it down and tell us there were problems with the elevator.
Q. Which elevator?
A. The freight, the one that takes car [sic] up. He would tell us ahead of time, "If you're going to get some material in, it has to be before such and such day because we're shutting it down because there are issues with it."
Q. Do you know how many times he shut down the elevator prior to your accident?
A. That I can recall, four?
Q. Four times?
A. Yeah. I would have to look at my reports from back then, the daily reports I have with the company, because I have daily reports of what goes on on the jobsite."

NYSCEF Doc. No. 178, tr at 362-365.

Furthermore, plaintiff testified that he was told by the superintendent that someone was hurt before and that they would have to fix the lack of warning sound on the elevator door.

Along with the testimony which demonstrates that the defendants may have been on notice of doors closing too fast and that the elevator was shut down four times, the record includes a document entitled "City of New York Department of Buildings Freight & Sidewalk Elevator Inspection Certificate" which specifies that it is for freight elevator "1F10246" at "200 11 Avenue" (NYSCEF Doc. No. 181). Along with providing an inspection date, the document specifies, "[t]his is not a passenger elevator. It is unlawful for any person other than the operator or those necessary for handling freight to ride on this elevator." *Id.*

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No. 007 008**

Page 26 of 39

[* 26]

It is unclear from the record why the building was allowing plaintiff to utilize the elevator if his use was prohibited by the Department of Buildings as plaintiff was not moving freight and was not an elevator operator. In fact, Mallia testified that the building was aware of the use of the elevator as he testified that "[i]t is a freight elevator. It is supposed to be run by an operator, not a passenger elevator. They were using it for construction. Passengers were in there. I did tell Andre a couple of times" (Mallia EBT, at 50).

Furthermore, the elevator call log references that a call on November 13, 2012, states that the "freight elevator rear door not closing completely" and "service man will be here as soon as they can as per Linda (dispatcher)" (NYSCEF Doc. No. 181). Slapar testified that between November 13, 2012, and the day of plaintiff's accident, Rotavele would have corrected the problem; however, the testimony lacks specificity and he testified that it was "reasonable to think" that Rotavele would have been present to correct the problem, and testified that he had no recollection of Rotavele not showing up. Yet, his testimony is inconclusive as to whether he had knowledge that Rotavele resolved the issue as he failed to testify that he observed workers or was present when it was repaired.

Slapar also testified that he recalls instructing plaintiff on how to use the freight elevator, however, he did not recall providing instructions about exiting the freight elevator on the ground floor and bringing the garbage out of the elevator.

Therefore, as questions of fact exists as to whether the defendants Board of Managers and Douglas Elliman were on notice of the condition of the elevator, the part of plaintiff's summary judgment alleging a violation of Labor Law § 200, and the part of Board of Managers' and Douglas Elliman's cross-motion seeking to dismiss the cause of action for Labor Law § 200 must be denied.

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No.  007 008**

**Rotavele's Cross-Motion**

In opposition to the part of plaintiff's motion seeking summary judgment and in support of its own cross-motion for summary judgment, Rotavele contends that plaintiff's claims for common law negligence and Labor Law § 200 should be dismissed because this work was not part of the construction in the building; Rotavele did not owe any duty of care to plaintiff and did not supervise or control the manner in which plaintiff worked. Rotavele argues that there is no evidence that any calls to Rotavele addressed complaints or repairs related to falling doors/gates or issues with the elevator light curtain prior to the incident. Rotavele asserts that prior to the construction project involving plaintiff, Rotavele was providing general maintenance to the building's elevators and that its contract had nothing to do with a renovation project within the building.

While Rotavele is not an owner or a general contractor of the construction project, and did not supervise the work of plaintiff or anyone else at the site, a question remains as to whether Rotavele may have been negligent pursuant to the common law in its maintenance of the subject elevator and whether it had any notice of any issues with the elevator. "An elevator company which agrees to maintain an elevator in safe operating condition may be liable to a passenger for failure to correct conditions of which it has knowledge or failure to use reasonable care to discover and correct a condition which it ought to have found." *Rogers v Dorchester Associates*, 32 NY2d 553, 559 (1973).

Rotavele submits an affidavit from McPartland which states that based upon his review of documents, which included the elevator maintenance and repair records, it is his opinion that the accident "did not occur due to any malfunction or defect involving any components of the elevator" (NYSCEF Doc. No. 285, tr at 6-7).

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
Motion No.  007 008

Page 28 of 39

28 of 39

[* 28]

However, this affidavit conflicts with that of plaintiff's expert, Carrajat. Carrajat states that "[t]he records of Rotavele do not delineate what maintenance was performed on the subject elevator" (NYSCEF Doc. No. 196, tr at 6). Furthermore, Carrajat concludes that "[i]t is my opinion to a reasonable degree of mechanical certainty that a power-driven gate does not strike a person in the normal operation of the device absent negligence in its maintenance" (*Id.*, tr at 7).

Along with the conflicting expert affidavits, it is also unclear from the testimony whether a warning sound, which was to alert individuals that the elevator was closing, was functioning properly. While plaintiff testified that he did not hear any warning sound alerting him that the elevator doors were closing, Mallia testified that prior to November 26, 2012, there were not any problems with the sound which was generated prior to the doors closing.

Mallia's testimony is also unclear about certain testing which was to take place on the elevators. Mallia testified that he was not sure when category testing was completed prior to plaintiff's accident, which could be conducted by a secondary agency and which reviews all of the switches, doors, zone restricters, and physical safety of the car. He also did not recall if the safety curtain device was repaired or replaced in any way.

According to a record produced, the freight elevator doors were not closing as of November 13, 2012. While plaintiff testified that the elevator had to be shut down four times while he was working at the location, the elevator call log is unclear as to the reasons it was shut down from service all four times and whether it had anything to do with maintenance.

Therefore, as questions of fact exist, the part of plaintiff's motion seeking summary judgment for common law negligence as against Rotavele must be denied, and the part of Rotavele's motion seeking to dismiss the claims for common law negligence must be denied.

**161059/2013   RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No.  007 008**

Page 29 of 39

Rotavele also contends in its cross-motion that Board of Managers' claims for contractual indemnification against it must be dismissed, as Rotavele's agreement with Board of Managers contains no written contractual indemnification language. Board of Managers and Douglas Elliman fail to oppose this argument and to demonstrate whether an indemnification agreement existed. Therefore, the part of Rotavele's cross-motion seeking summary judgment dismissing Board of Managers' and Douglas Elliman's claim for contractual indemnification against Rotavele must be granted.

With regards to Board of Managers' and Douglas Elliman's claims for common law indemnification, Rotavele contends that the Board of Managers' and ZMK's claims against Rotavele should be dismissed because there is no evidence of any negligence by Rotavele, that Rotavele was not contacted as a result of the accident, that Rotavele did not need to make any repairs as a result of the accident, and because the actual negligence of Board of Managers and ZMK would preclude any claims of common law indemnification.

To establish a claim for common-law indemnification, "the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident." *Perri v Gilbert Johnson Enters., Ltd.*, 14 AD3d 681, 684-685 (2d Dept 2005), *quoting Correia v Professional Data Mgt.*, 259 AD2d 60, 65 (1st Dept 1999).

As a question of fact exists as to whether Rotavele, Board of Managers or ZMK were negligent, the part of Rotavele's cross-motion seeking summary judgment as to the claims for common law indemnification must be denied.

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
Motion No.  007 008

**ZMK's Cross-Motion**

ZMK cross-moves, and contends that Board of Managers' and Douglas Elliman's cause of action for contribution and common law indemnification as against ZMK must be dismissed, as plaintiff has not suffered a grave injury pursuant to Workers' Compensation Law §§ 10 (1) and 11. ZMK argues that it is well settled in New York that a plaintiff/employee cannot directly sue his or her employer if the employer complied with the Workers Compensation Law.

Section 11 of the New York Workers' Compensation Law provides, in relevant part:

"[a]n employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a 'grave injury' which shall mean only one or more of the following: death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability."

NY CLS Work Comp § 11.

The Court of Appeals has held that "[t]he grave injuries listed are deliberately both *narrowly and completely described.* The list is exhaustive, not illustrative; it is not intended to be extended absent further legislative action." *Castro v United Container Mach. Group*, 96 NY2d 398, 402 (2001) (citation omitted). A brain injury results in "permanent total disability when the evidence establishes that a worker is not employable in any capacity." *Rubeis v Aqua Club, Inc.*, 3 NY3d 408, 413 (2004).

ZMK contends that it is undisputed that ZMK was plaintiff's employer at the time of the alleged accident and that plaintiff received Workers' Compensation benefits as a result of such accident. ZMK maintains that plaintiff alleges that he sustained injuries to his cervical and

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No.  007 008**

**Page 31 of 39**

31 of 39

lumbar spine, underwent an L4-L5 anterior/posterior fusion with laminectomy, and that he sustained several disc bulges and herniations. ZMK argues that plaintiff's only claim to having a grave injury consists of his allegation that he sustained a traumatic brain injury as the other injuries alleged by his bill of particulars do not constitute grave injuries under the Workers' Compensation Law.

ZMK asserts that plaintiff was examined by two independent physicians, Dr. Johnathan Garay (Dr. Garay), a Diplomate of the American Osteopathic Board of Physical Medicine and Rehabilitation, and Dr. William Barr (Dr. Barr), the Director of the Neuropsychology Division of the NYU School of Medicine's Department of Neurology. ZMK maintains that Dr. Garay found that there is no casually related cervical or lumbar impairment with respect to plaintiff's instant accident and alleged injuries, and that plaintiff's medical records demonstrated that he did not seek medical attention immediately following the accident, that he did not lose consciousness following the accident, and that he refused a CT scan.

ZMK contends that Dr. Garay opined that the absence of objective signs of a trauma to plaintiff's head on his initial exam is also inconsistent with a significant contusion and is inconsistent with a traumatic brain injury. ZMK claims that Dr. Garay noted that plaintiff's initial exams were without signs of any objective neurological findings to suggest a traumatic brain injury and that the subsequent CT scan of the brain was without signs of a trauma, and that there were no objective neurological deficits.

ZMK argues that Dr. Barr maintains that based on the direct examination of plaintiff and a review of medical records that there is no valid test data from this evaluation or from any other source indicating that plaintiff suffered from any persisting cognitive or psychological effects of brain trauma secondary to the work-related accident on November 26, 2012. ZMK contends that

**161059/2013 RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No. 007 008**

**Page 32 of 39**

[* 32]

Dr. Barr further found that there is no objective evidence to support claims of any cognitive or psychological impairment or permanent functional disturbance resulting from injuries sustained on November 26, 2012.

ZMK argues that defendants' experts make clear that plaintiff's medical records contain no objective clinical data or evidence of a brain injury or neurological condition attributable to the instant accident. They maintain that ZMK has demonstrated a prima facie showing that plaintiff did not sustain a grave injury pursuant to Workers' Compensation Law §11 and that, therefore, the Board of Managers' and Douglas Elliman's third-party claims for common law indemnification and contribution must be dismissed.

Here, Board of Managers and Douglas Elliman fail to oppose such argument of ZMK or demonstrate that plaintiff suffered a grave injury. Therefore, the part of ZMK's cross-motion seeking to dismiss Board of Managers' and Douglas Elliman's causes of action for contribution and common law indemnification as against ZMK must be granted.

ZMK argues that it is also entitled to summary judgment as to Board of Managers' and Douglas Elliman's claims for contractual indemnification and breach of contract as against it.

The Appellate Division, First Department, has held that "'the intention to indemnify [must] be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances.'" *Masciotta v Morse Diesel Intl.*, 303 AD2d 309, 310 (1st Dept 2003), *quoting Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 777 (1987). "In contractual indemnification, the one seeking indemnity need only establish that it was free from any negligence and was held liable solely by virtue of the statutory liability. Whether or not the proposed indemnitor was negligent is a non-issue and irrelevant." *Correia v Professional Data Mgt.*, 259 AD2d at 65.

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No.  007 008**

**Page 33 of 39**

ZMK contends that there was no contract or indemnification agreement entered into by ZMK relative to its work on this project at the subject apartment. ZMK argues that Board of Managers fails to set forth any party testimony to establish an intention by ZMK to enter into a contract or indemnification agreement. ZMK claims that the testimony of Kaplan and Conrad establishes that there was not a separate contract or agreement between ZMK and the Board of Managers and that Conrad hired ZMK to perform renovation work to the subject apartment. Kaplan testified that he did not sign an indemnification agreement with the Board of Managers.

ZMK asserts that while the Board of Managers alleges that Kaplan signed a contract which included an indemnification agreement on behalf of ZMK, ZMK submits an affidavit from Ryan, a board-certified forensic document examiner expert, who reviewed the purported indemnification agreement and exemplary signatures of Kaplan. ZMK argues that Ryan opines that the signature on the "Contractor's Indemnification & Insurance Requirements" is not the signature of Kaplan. ZMK contends that, consistent with the testimony of Kaplan and the expert opinion of Ryan, ZMK has demonstrated that there was no contract or indemnification agreement entered into by ZMK relative to its work on the project.

In opposition, the Board of Managers and Douglas Elliman argue that ZMK is not entitled to the dismissal of the contractual indemnity claims. They maintain that the contract provides that ZMK must indemnify Board of Managers for all claims connected with or arising directly or indirectly out of the activities, performance, or non-performance of the work of ZMK. They claim that the indemnity agreement between Board of Managers and ZMK is clear and unambiguous, and that there is no reason to believe that Kaplan's signature is a forgery.

Here, Board of Managers and Douglas Elliman, as well as ZMK, submit expert affidavits which raise a question of fact as to whether there was an indemnification agreement and contract

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
Motion No. 007 008

**Page 34 of 39**

34 of 39

[* 34]

in place. In support of ZMK, Ryan submits an affidavit which states that based upon his review of the exemplar signatures of Kaplan and his comparison of the signatures to a purported indemnification agreement disclosed by Board of Managers, it is highly probable and virtually certain that the signature set forth on the purported indemnification agreement is not the signature of Kaplan. Conversely, Luber submits an affidavit which states that he has examined the known signatures of Kaplan and the questioned signature on the indemnification agreement, and concludes that there is not enough available evidence basis for Ryan to reach his conclusions that Kaplan's signature is not genuine.

As a question of fact exists from the disputed testimony and expert affidavits as to whether the indemnification agreement was agreed to and signed by Kaplan, the part of ZMK's motion for summary judgment dismissing the claims for contractual indemnification and breach of contract must be denied.

**Motion Sequence 008**

Conrad and Cohen argue that Board of Managers' and Douglas Elliman's cause of action for breach of contract for failure to procure insurance must be dismissed. They contend that the condominium bylaws governing the relationship between 200 Eleventh Avenue Condominium and Conrad and Cohen do not require the second-third party defendants to procure insurance and that, therefore, no contract was breached.

In opposition, Board of Managers and Douglas Elliman fail to demonstrate how Conrad and Cohen breached a contract and failed to procure insurance. *See Genovese v Gambino*, 309 AD2d 832, 833 (2d Dept 2003). Therefore, the part of Conrad and Cohen's motion seeking to dismiss Board of Managers' and Douglas Elliman's cause of action for breach of contract for failing to procure insurance must be granted.

**161059/2013 RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
Motion No. 007 008

**Page 35 of 39**

Conrad and Cohen contend that Board of Managers' and Douglas Elliman's cause of action for common law indemnification must be dismissed as there is no evidence that they were negligent. They argue that plaintiff was the foreman and in charge of the means and methods, and ZMK testified that Conrad and Cohen did not direct or control, or provide any material equipment of supplies. Kaplan specifically testified that neither Conrad nor Cohen told the workers how to conduct their jobs and Conrad testified that neither he, his wife, nor anyone under his direction or authority supervised and controlled the work performed by ZMK Group.

In opposition, Board of Managers and Douglas Elliman fail to demonstrate that Conrad and Cohen controlled the injury producing work of plaintiff or had any notice of problems with the subject elevator. Furthermore, Board of Managers and Douglas Elliman fail to demonstrate that Conrad or Cohen contributed to plaintiff's accident. *See McCarthy v Turner Constr. Inc.*, 17 NY3d 369, 378 (2011) ("[t]hus, if a party with contractual authority to direct and supervise the work at a job site never exercises that authority because it subcontracted its contractual duties to an entity that actually directed and supervised the work, a common-law indemnification claim will not lie against that party on the basis of its contractual authority alone").

Therefore, as Board of Managers and Douglas Elliman fail to meet their burden to demonstrate that either Conrad or Cohen actually directed and supervised the work of plaintiff or were negligent, their causes of action for common law indemnification and contribution must be dismissed.

Conrad and Cohen also contend that they are entitled to summary judgment dismissing Board of Managers' and Douglas Elliman's cause of action for contractual indemnification. Conrad and Cohen claim that Section 6.11.2 of the bylaws of 200 Eleventh Avenue

**161059/2013 RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
Motion No. 007 008

**Page 36 of 39**

36 of 39

[* 36]

Condominium, the building in which they own a residence, includes an indemnification agreement which provides:

> "[a]ll structural alterations, additions and improvements by Unit Owners shall be made in compliance with all laws, rules, ordinances and regulations of all governmental authorities having jurisdiction thereof. A Unit Owner making or causing to be made any structural alteration, addition or improvement shall agree, and shall be deemed to have agreed, to hold the Board and all other Unit Owners harmless from any liability arising therefrom."

Conrad and Cohen argue that the indemnification provision violates the General Obligations Law and should be deemed void.

General Obligations Law §5-322.1, provides:

> "[e]very covenant, agreement or understanding in or in connection with or collateral to any lease of real property exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor, his agents, servants or employees, in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable."

In opposition, Board of Managers and Douglas Elliman assert that the indemnity provision complies with the General Obligations Law. They maintain that Conrad and Cohen should provide them with indemnification for plaintiff's accident. They argue that because Conrad was responsible for structural alterations, additions and improvements, Conrad must indemnify Board of Managers. They contend that there is no question that plaintiff's alleged incident giving rise to this litigation arose out of and resulted from the work being performed by ZMK under its contract with Conrad.

Here, whether Board of Managers and Douglas Elliman are negligent and have any liability has not yet been determined, as issues of fact exist as to the cause of plaintiff's accident. Therefore, as no finding has yet been made regarding the fault for plaintiff's alleged injuries,

**161059/2013   RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No.  007 008**

Page 37 of 39

37 of 39

[* 37]

summary judgment as to the claims for contractual indemnification would be premature. *See Maxwell v Toys "R" Us,* 258 AD2d 630, 630 (2d Dept 1999); *Cackett v Gladden Props., LLC,* 183 AD3d 419, 422 (1st Dept 2020).

## CONCLUSION

Accordingly, it is

ORDERED that plaintiff Alan Rivera's motion, pursuant to CPLR 3126, to strike the answer of second third-party defendants Conrad and Cohen, is denied as moot; and it is further

ORDERED that plaintiff Alan Rivera's motion for summary judgment is denied; and it is further

ORDERED that ZMK Group Inc.'s cross-motion is granted only to the extent that Board of Managers' and Douglas Elliman's cause of action for contribution and common law indemnification as against ZMK are dismissed; and it is further

ORDERED that Rotavele Elevator, Inc.'s cross-motion for summary judgment is granted only as to the causes of action for violations of Labor Law §§ 200, 240 (1) and 241 (6), which are dismissed, and Board of Managers' and Douglas Elliman's claim for contractual indemnification as against Rotavele Elevator, Inc. is dismissed; and it is further

ORDERED that the part of defendants/third party plaintiffs/second third-party plaintiffs Board of Managers 200 Eleventh Avenue Condominiums' and Douglas Elliman Property Manager's cross-motion for summary judgment dismissing the claims for violations of Labor Law § 240 (1) and Industrial Code Sections 23-1.7 (a) (1), 23-7.3 (e), and 23-7.3 (f) is granted; and it is further

ORDERED that Andrew Conrad's and Hay Lynn Cohen's motion (sequence 008) for summary judgment is granted in part to the extent that Board of Managers' and Douglas

**161059/2013  RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No.  007 008**

**Page 38 of 39**

Elliman's causes of action for common law indemnification, contribution, and for breach of contract for failing to procure insurance are dismissed.

This constitutes the Decision and Order of this Court.

| 1/22/2024 | | James d'Auguste, J.S.C. |
|-----------|---|------------------------|
| DATE | | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION |
|------------|-----------------|-------------------------|
| | ☐ GRANTED ☐ DENIED | ☐ GRANTED IN PART ☒ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE |

**161059/2013   RIVERA, ALAN vs. ROTAVELE ELEVATOR, INC.**
**Motion No.  007 008**

Page 39 of 39