■ WARREN MURPHY, Respondent, v COLUMBIA UNIVERSITY et al., Defendants and Third-Party Plaintiffs-Appellants. PRECISION SPECIALIST METAL & GLASS, INC., Third-Party Defendant-Appellant. [773 NYS2d 10]—

Counterorder and judgment (one paper), Supreme Court, New York County (Paula Omansky, J.), entered March 25, 2003, which, after a jury trial, awarded plaintiff damages upon a verdict of, inter alia, $292,666.37 for past lost earnings, $3,187,923.20 for future lost earnings, $225,000 for past pain and suffering, and $576,000 for future pain and suffering; apportioned liability 75% to defendants and third-party plaintiffs and 25% to third-party defendant; and awarded third-party plaintiff Pavarini Construction indemnification against third-party defendant for 25% of the verdict and defense costs, unanimously modified, on the law and the facts, to vacate the damages award for past and future pain and suffering and past and future lost earnings and remand those issues for a new trial, and to direct that defendant Columbia University is entitled to full indemnification from third-party defendant, and otherwise affirmed, without costs.

General contractor Pavarini purchased and installed the corrugated cardboard covering for the walls of the room in which plaintiff had been welding, as temporary protection for the newly installed wall tiles. When the cardboard caught fire, plaintiff grabbed a pail and ran for water to a nearby janitor's closet, where he tripped in the dark over debris and suffered injury. It was Pavarini's job to clean up debris and provide lighting at the site.

There was sufficient evidence from which the jury could conclude that Pavarini had either created the unsafe condition, by installing the flammable cardboard, or had actual or constructive notice of the defect (*see Lally v JGN Constr. Corp.*, 295 AD2d 148 [2002], *lv denied* 99 NY2d 504 [2002]). There was also evidence that the type of debris in the closet was that left by either electricians or tile workers, who had last worked in the area two days earlier.

The evidence was legally sufficient to support the finding that Pavarini violated Labor Law § 200. It was not necessary to prove Pavarini's supervision and control over plaintiff because the injury arose from the condition of the work place created by or known to the contractor, rather than the method of plaintiff's work (*see Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993]; *Roppolo v Mitsubishi Motor Sales of Am.*, 278 AD2d 149, 150 [2000]).

Documents relating to the day of the accident and the previous day were missing. The jury was properly given a missing documents charge, allowing it to infer that these papers might well have contained evidence of notice to Pavarini about accumulated debris or inadequate lighting conditions.

The apportionment of liability between Pavarini and third-party defendant Precision Specialist Metal & Glass was not against the weight of the evidence. While Precision was found negligent for not providing a "fire watch" during the welding operation, plaintiff's witness testified that fire prevention was a "dual responsibility" between Pavarini and the subcontractors. The jury reasonably concluded that Pavarini was also negligent for the above-mentioned cardboard, debris and lighting, all of which were proximate causes of the accident.

The evidence was legally sufficient to support the finding that defendants Columbia and Pavarini violated Labor Law § 241 (6). Defendants' assertion that 12 NYCRR 23-2.1 is not specific enough to support a violation of Labor Law § 241 (6) is unpreserved, since defendants never objected to the submission of this Industrial Code violation to the jury (CPLR 4110-b; *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 317 [1980]), and we decline to reach the issue. Sections 23-1.30 and 23-1.7 (e) are sufficiently specific with regard to the obligation to keep work areas illuminated and free of debris. No expert testimony regarding the level of illumination was necessary to demonstrate its inadequacy, inasmuch as two witnesses testified that lighting was "nonexistent" and "pitch black." It also cannot be said, as a matter of law, that the janitor's closet on this new construction site was not part of the work area, within the meaning of the Code (*see Sergio v Benjolo N.V.*, 168 AD2d 235, 236 [1990]).

The indemnification agreement between defendants and third-party defendant did not violate General Obligations Law § 5-322.1, in that the obligation was "to the fullest extent permitted by applicable law" (*see Dutton v Pankow Bldrs.*, 296 AD2d 321, 322 [2002], *lv denied* 99 NY2d 511 [2003]), and should be read to give the provision effect, rather than in a

manner that would render it void (*see Ronnen v Ajax Elec. Motor Corp.*, 88 NY2d 582, 589 [1996]; *Ciocca-Lombardi Wine Co. v Fucini*, 204 App Div 392, 394 [1923], *affd* 236 NY 584 [1923]). However, the court incorrectly concluded that Columbia's vicarious liability was unrelated to the negligence of the third-party defendant because Precision was not found to have violated Labor Law § 241 (6).

The indemnity agreement calls for subcontractor Precision to indemnify Columbia and Pavarini for "any and all claims . . . arising in whole or in part and in any manner from injury . . . resulting from the acts [or] omissions . . . of [Precision] . . . in connection with the performance of any work by or for" Precision pursuant to the construction contract. Plaintiff, as Precision's employee, began the chain of events leading to his injuries while welding pursuant to the contract. Precision's failure to provide a fire watch was a proximate cause of plaintiff's injuries, a link in the chain leading to Columbia's liability, thus entitling Columbia and Pavarini to indemnification under the agreement.

Pavarini was only entitled to 25% indemnification because it was found to be actively negligent and 75% liable. However, Columbia, as the owner, was only vicariously liable, and thus entitled to full indemnification from Precision, including costs of defense.

While we find the award for past and future pain and suffering to deviate materially from what is reasonable compensation under the circumstances, and would ordinarily order a new trial in the event that plaintiff did not stipulate to a reduced award (CPLR 5501 [c]), under the circumstances of this case we find it necessary to simply order a new trial on the issue of such damages because the court improperly permitted plaintiff's treating physician to testify as to the contents of the MRI report, without any evidence of the reliability of the report. This was a violation of the best evidence rule (*Hambsch v New York City Tr. Auth.*, 63 NY2d 723 [1984]; *Wagman v Bradshaw*, 292 AD2d 84 [2002]). This MRI was the primary basis for the physician's diagnosis, and unavoidably affected the jury's view of the extent of plaintiff's injuries, thus necessitating a new trial on the issue of damages for pain and suffering as well as lost past and future earnings.

Not only were the awards excessive, but the court improperly denied defendants' request to charge the jury on plaintiff's obligation to mitigate damages (*McLaurin v Ryder Truck Rental*, 123 AD2d 671, 673 [1986]), especially since the unemployed plaintiff did not contest his capability of working and earning as

much as $35,000 per year. Concur—Nardelli, J.P., Saxe, Lerner and Marlow, JJ.