■ PAUL URBAN, Respondent-Appellant, v No. 5 TIMES SQUARE DEVELOPMENT, LLC, et al., Respondents-Appellants, and AMEC CONSTRUCTION MANAGEMENT, INC., et al., Appellants-Respondents, et al., Defendants. (And Other Actions.) [879 NYS2d 122]—

Order, Supreme Court, New York County (Emily Jane Goodman, J.), entered February 29, 2008, that to the extent appealed from, as limited by the briefs, granted the motion of defendants No. 5 Times Square Development and Boston Properties (No. 5/Boston) for summary judgment dismissing the common-law negligence and Labor Law §§ 200 and 241 (6) claims against them, granted the motions of defendants AMEC Construction Management and Maximum Security Products doing business as Hillside Ironworks (Hillside) for summary judgment dismissing the Labor Law § 241 (6) claim against them but denied relief as to the common-law negligence and section 200 claims against them, dismissed the cross claims by No. 5/Boston against AMEC and Hillside for contractual and common-law indemnity, and denied the motion by No. 5/Boston for summary judgment against AMEC and Hillside for breach of contract to procure in

surance, unanimously modified, on the law, summary judgment granted to Hillside dismissing all claims against it based on section 200, summary judgment denied to No. 5/Boston on the section 200 and common-law negligence claims, as well as on their contractual and common-law indemnification cross claims, and otherwise affirmed, without costs.

Plaintiff, an electrician, was injured on September 17, 2002, after stepping into a gap between the entrance to a catwalk and the catwalk itself. Defendant Boston owned the building and defendant No. 5 developed it. Subcontractor Hillside designed, constructed and installed the catwalk pursuant to a change order with general contractor/construction manager AMEC. Hillside finished its work in March or April 2002 and did not return to the job site thereafter. Plaintiff's employer (OHM Electric Corp.) contracted directly with No. 5, not with AMEC. Neither No. 5/Boston nor AMEC controlled plaintiff's work. About three weeks before his accident, plaintiff complained to his OHM foreman about the 10-to-12-inch gap, but no action was taken in response.

## I. Hillside

The court should have dismissed all claims against Hillside based on Labor Law § 200. Hillside was neither an owner nor a general contractor (*see Ryder v Mount Loretto Nursing Home*, 290 AD2d 892, 894 [2002]). Hillside was in an entirely different trade and had left the job site months before plaintiff commenced work (*see Kelarakos v Massapequa Water Dist.*, 38 AD3d 717, 718 [2007]). Hillside did have authority and control over the construction and installation of the catwalk, allegedly the instrumentality giving rise to plaintiff's injury. However, this is insufficient for a section 200 claim, although it is sufficient for a common-law negligence claim (*see e.g. Bell v Bengomo Realty, Inc.*, 36 AD3d 479, 481 [2007]).

The court properly denied summary judgment to Hillside on plaintiff's common-law negligence claim because there was a triable issue of fact as to whether Hillside had ever installed a cover plate over the gap (*see generally Urbina v 26 Ct. St. Assoc., LLC*, 12 AD3d 225, 226 [2004]). Even though Hillside's witness testified that Hillside had welded a plate to the catwalk, there was no plate present at the time of plaintiff's accident. Hillside's witness admitted that it would have been evident if there was a broken weld and plaintiff stated under oath that there was no indication that the plate had been welded and then removed. A representative of Boston stated under oath that Boston never removed the plate. Further, there is no reason why anyone would have removed a cover plate had there been one.

## II. No. 5/Boston

The motion court should have denied No. 5/Boston's motion for summary judgment on the Labor Law § 200 claim. Plaintiff's injury did not arise from the method or manner that OHM or plaintiff used to perform his work. Rather, his injury arose from a defective condition of the workplace because liability derives from the defective condition of the catwalk from where plaintiff was attempting to work (*see Hernandez v Columbus Ctr., LLC*, 50 AD3d 597, 598 [2008] [opening in plank that buckled]). Therefore, on his Labor Law § 200 claim, plaintiff need not show that No. 5/Boston, the owner and developer, controlled or directed the manner of his work (*see e.g. Griffin v New York City Tr. Auth.*, 16 AD3d 202 [2005]; *Murphy v Columbia Univ.*, 4 AD3d 200, 202 [2004]; *Roppolo v Mitsubishi Motor Sales of Am.*, 278 AD2d 149, 150 [2000]). However, for purposes of the motions at issue on appeal, plaintiff must demonstrate a triable issue of fact as to No. 5/Boston's actual or constructive notice. There was no evidence that No. 5/Boston had actual notice of the gap between the building and the catwalk. By contrast, there is a triable issue of fact as to whether these defendants had constructive notice (*see generally Griffin*, 16 AD3d at 203). If one views the evidence in the light most favorable to plaintiff, the gap was 10 to12 inches wide and six feet, eight inches long, and it existed for five to six months before his accident. A trier of fact could therefore conclude that the property owner should have been aware of this potentially dangerous condition.

The motion court should also have denied No. 5/Boston's motion for summary judgment dismissing the common-law negligence claims against them. "A landowner must act as a reasonable [entity] in maintaining [its] property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury" (*Basso v Miller*, 40 NY2d 233, 241 [1976], quoting *Smith v Arbaugh's Rest., Inc.*, 469 F2d 97, 100 [DC Cir 1972], *cert denied* 412 US 939 [1973]). In addition, both an owner and a general contractor have a duty to furnish a safe place to work (*see e.g. Monroe v City of New York*, 67 AD2d 89, 96 [1979]; *Employers Mut. Liab. Ins. Co. of Wis. v Di Cesare & Monaco Concrete Constr. Corp.*, 9 AD2d 379, 383 [1959]). "[T]he duty . . . to provide a safe place to work encompasses the duty to make reasonable inspections to detect unsafe conditions" (*DaBolt v Bethlehem Steel Corp.*, 92 AD2d 70, 73 [1983], *lv dismissed and appeal dismissed* 60 NY2d 701 [1983]; *see also Employers Mut. Liab. Ins. Co. of Wis.*, 9 AD2d at 382). "[W]hether the danger should have been apparent upon visual inspection" is a "question[ ] of fact bearing on [defendant's] liability" (*DaBolt*, 92 AD2d at 73).

## III. AMEC

The motion court was correct to deny AMEC's motion for summary judgment on the section 200 and common-law negligence claims against it. Unlike injuries arising out of the method of work, where the injury arises from a condition of the workplace, it is "not necessary to prove [the general contractor's] supervision and control over plaintiff" (*Murphy*, 4 AD3d at 202; *see also Hernandez v Columbus Ctr., LLC*, 50 AD3d at 598). Rather, where a plaintiff's injuries stem from a dangerous condition on the premises, "a general contractor may be liable in common-law negligence and under Labor Law § 200 if it has control over the work site and actual or constructive notice of the dangerous condition" (*Keating v Nanuet Bd. of Educ.*, 40 AD3d 706, 708 [2007]; *see also Murphy*, 4 AD3d at 201-202; *Hernandez*, 50 AD3d at 598). In the case of a general contractor, this standard makes sense because a general contractor is unlikely to have notice without some control or supervision over the work site.

Here, there are issues of fact as to whether and to what extent AMEC controlled the work site and whether AMEC knew or should have known about the unsafe condition of the work site that gave rise to plaintiff's injury. For example, AMEC's contract with No. 5/Boston placed the responsibility for supervising the work site on AMEC. AMEC's project managers were expected to and did walk through the catwalk. There is also evidence that AMEC had the responsibility to coordinate the work of the various subcontractors on the site, was in charge of site safety and had a site safety director on the work site. These factors, coupled with the length of time the gap existed before the accident, certainly are enough to raise an issue of fact whether AMEC had at least constructive notice of the dangerous condition.

## IV. Labor Law § 241 (6)

The court properly dismissed plaintiff's Labor Law § 241 (6) claim in its entirety. Insofar as it was based on 12 NYCRR 23-1.7 (b) (1) (i), a 10-to-12-inch gap is not a "hazardous opening" for purposes of that regulation (*see e.g. Messina v City of New York*, 300 AD2d 121, 123-124 [2002]). Nor is 12 NYCRR 23-1.7 (e) (1) applicable to this case. The gap between the building and the catwalk is a not a "condition" that "could cause tripping."

## V. Indemnification

The motion court dismissed No. 5/Boston's cross claims for contractual indemnification and common-law indemnification because it had dismissed the complaint against these entities in its entirety. It therefore did not reach the question of whether and to what extent No. 5/Boston were entitled to summary judgment on their claims for contractual and common-law indemnity.

Here, because questions of fact exist as to whether No. 5/Boston had constructive notice regarding the gap between the building and the catwalk, summary judgment to No. 5/Boston on indemnification cannot be granted at this juncture. It is also unclear whether Hillside and AMEC will ultimately be found negligent. Hillside's witness testified that it had installed a cover plate, while various witnesses testified that they did not notice any gap. Thus, factual issues as to constructive notice and negligence exist that preclude summary judgment on contractual indemnification and common-law indemnification at this juncture.

The court properly denied No. 5/Boston's summary judgment motion on their cross claims against AMEC and Hillside for breach of contract for failure to procure insurance. In their motion, No. 5/Boston did not mention failure to procure insurance. Therefore, it is hardly surprising that AMEC failed to produce an insurance policy in opposition to the motion. As for Hillside, it produced an insurance policy naming "Boston Properties, Inc. (Owner) and No. 5 Times Square Development, LLC (Developer)" as insureds.

We have considered the parties' remaining contentions for affirmative relief and find them unavailing. Concur—Andrias, J.P., Nardelli, Moskowitz, Renwick and Freedman, JJ. [*See* 2008 NY Slip Op 30551(U).]