**Lopez v NG 645 Madison Ave. LLC**

2024 NY Slip Op 30804(U)

March 13, 2024

Supreme Court, New York County

Docket Number: Index No. 158495/2019

Judge: Arlene P. Bluth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

INDEX NO. 158495/2019

RECEIVED NYSCEF: 03/13/2024

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:**   <u>HON. ARLENE P. BLUTH</u> | **PART**                                    **14** |
| *Justice* | |

-------------------------------------------------------------------------------X

LEONEL LOPEZ,

                               Plaintiff,

               - v -

NG 645 MADISON AVE LLC,BLR MADISON LLC,

                           Defendant.

-------------------------------------------------------------------------------X

NG 645 MADISON AVE LLC, BLR MADISON LLC

                           Plaintiff,

               -against-

VANGUARD CONSTRUCTION & DEVELOPMENT CO., INC., REAL PLUMBING CORP.

                           Defendant.

-------------------------------------------------------------------------------X

NG 645 MADISON AVE LLC, BLR MADISON LLC

                           Plaintiff,

               -against-

ZEREM ELECTRIC CORP.

                           Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 158495/2019 |
| **MOTION DATE** | 03/08/2024 |
| **MOTION SEQ. NO.** | 001 002 003 004 |

**DECISION + ORDER ON MOTION**

Third-Party
Index No.  595954/2019

Second Third-Party
Index No.  595759/2021

The following e-filed documents, listed by NYSCEF document number (Motion 001) 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 147, 155, 156, 161, 162, 163, 169

were read on this motion to/for          <u>         JUDGMENT - SUMMARY         </u>.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 148, 157, 158, 170, 171, 172, 173

were read on this motion to/for         <u>       PARTIAL SUMMARY JUDGMENT       </u>.

The following e-filed documents, listed by NYSCEF document number (Motion 003) 116, 117, 118, 119, 120, 149, 164, 165, 166, 174, 175, 176, 177

158495/2019   LOPEZ, LEONEL vs. NG 645 MADISON AVE LLC
Motion No.  001 002 003 004

Page 1 of 13

[* 1]

were read on this motion to/for        <u>      JUDGMENT - SUMMARY      </u> .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 150, 151, 152, 153, 154, 159, 160, 167, 168, 178

were read on this motion to/for        <u>      JUDGMENT - SUMMARY      </u> .

Motion Sequence Numbers 001 through 004 are consolidated for disposition. Second third-party defendant Zerem Electric Corp. ("Zerem")'s motion (MS001) for summary judgment is denied. Plaintiff's motion (MS002) for partial summary judgment under Labor Law § 241(6) and to dismiss affirmative defenses alleging culpable conduct is granted. Third-party defendant Real Plumbing Corp. ("Real Plumbing")'s motion (MS003) for summary judgment is granted as described below. Defendants NG 645 Madison Ave LLC and BLR Madison LLC (collectively the "Madison Defendants")'s motion (MS004) for summary judgment is granted in part and denied in part.

**Background**

This Labor Law action arises out of a construction accident suffered by plaintiff in which he suffered an electrical shock while cutting into a metal tray that threw him off a ladder. Unfortunately for plaintiff, the metal tray turned out to be an electrical bus that was not deenergized. Plaintiff spent a month in the burn unit following this accident.

He contends that he was working as a laborer for third-party defendant Vanguard Construction & Development Co. Inc. ("Vanguard") on the day of the accident (NYSCEF Doc. No. 82 at 17 [plaintiff's deposition transcript]). Vanguard was the "construction manager" on site hired by the owners of the buildings, the Madison Defendants. Plaintiff testified that he was instructed by his foreman from Vanguard to "clear the path for the Real Plumbing to put the anchors to support the temporary loop" (*id*. at 34-35). He explained that clearing the path meant

**158495/2019 LOPEZ, LEONEL vs. NG 645 MADISON AVE LLC**
**Motion No. 001 002 003 004**

**Page 2 of 13**

[* 2]

clearing "debris from the demo from before, some pieces of sheet rock" (*id*. at 35). The materials to be removed were located in the ceiling (*id*.).

Plaintiff testified that he had to remove the ceiling tiles, which were light, with his hands but that he needed a six-foot A-frame ladder to do his work (*id*. at 36). Next, the spots for the anchors were marked by Real Plumbing and plaintiff was told to "remove whatever was in the way so that they can drill the concrete to put the anchors" (*id*. at 37-38). He explained that "it was my job to get all the tools that I need to get together and start doing the job" (*id*. at 40).

Plaintiff observed that he also had to remove a tray, a piece of metal, that had to be cut and that this tray sometimes holds cables on top of it although plaintiff explained that his foreman (Steve) investigated and confirmed that there were no cables present (*id*. at 40-41). He insisted that his foreman (Steve) told him that he should cut the metal tray into pieces and then put these pieces into containers to be thrown out (*id*. at 47-48). Petitioner testified he used a "sawsaw" (commonly known as a sawzall or reciprocal saw) for this job (*id*. at 49).

Petitioner observed he was wearing work boots, jeans, a long sleeve shirt, cloth gloves, a hat and goggles that day (*id*. at 54). He explained that he only made a single cut lasting between 30 seconds and a minute into the metal when his accident occurred (*id*.). Plaintiff testified that after "45 second that I was going into the metal was when the explosion occurred" (*id*. at 55). "It was--- it was a very bright light and very loud noise when the sawsaw went through the tray" (*id*.). He added that there were flames and that he probably suffered some type of shock that threw him off the ladder (*id*. at 56).

At the time of the accident no one was with plaintiff in the hallway where he was working although there were plumbers about 30 to 40 feet away behind a door (*id*.). Plaintiff noted that after his accident, he learned that he had cut into something called an electrical bus

**158495/2019   LOPEZ, LEONEL vs. NG 645 MADISON AVE LLC**
**Motion No.  001 002 003 004**

**Page 3 of 13**

3 of 13

[* 3]

(*id*. at 58). He was told that there was about 10,000 to 12,000 volts going through the board to the tray he cut (*id*. at 58-59).

**MS001**

Zerem, the electrical contractor, moves for summary judgment on the ground that it had no connection to the accident. It observes that the electrical bus that plaintiff cut into was mistaken for a data tray and had been inadvertently marked for demolition without Zerem's knowledge. Zerem claims that it was never asked to do anything with regard to the electrical bus and, even if it had, the building staff would have had to help turn off the power in order to remove this item.

In opposition, Real Plumbing contends that plaintiff testified that someone from Zerem came the day before his accident to ensure that everything was ready for the demo crew. Real Plumbing claims Zerem failed to ensure that the power was turned off on the floor in question— the fourth floor.

The Madison Defendants also submit opposition. They claim that Vanguard's witness testified that Zerem was responsible for ensuring that the electricity was turned off on the date of the accident. (The Madison Defendants also moved separately for relief against Zerem, issues that will be discussed below).

In reply, Zerem emphasizes that it was never asked to inspect this area or to evaluate whether or not the power should be shut off.

The Court denies this motion. Plaintiff testified that he recalled that an electrician from Zerem had come to the fourth floor where he was working before the demolition in order to kill the power (NYSCEF Doc. No. 82 at 32). That Zerem contends this did not occur raises an issue of fact about whether Zerem was asked but failed to ensure that the power was turned off in the

**158495/2019   LOPEZ, LEONEL vs. NG 645 MADISON AVE LLC**
**Motion No.  001 002 003 004**

**Page 4 of 13**

4 of 13

[* 4]

areas in which plaintiff was working. Moreover, the purchase order between Zerem and Vanguard raises another issue of fact as it required Zerem to "provide all disconnects and safe offs for the removals by others" (NYSCEF Doc. No. 104).

A fact finder must evaluate whether nor Zerem had a responsibility or obligation to ensure that the power was turned off. The jury can also evaluate Zerem's contention that it was not hired to do anything related to bus duct in question, that it was never told it had to shut off the power for this electrical bus and that it could not have done anything without direction from someone in building management.

**MS002**

Plaintiff moves for partial summary judgment as to liability on this claim under Labor Law § 241(6) and specifically 12 NYCRR 23-1.13(b)(3) and 23-1.13(b)(4) (sections under the Industrial Code). He insists that these regulations require that where a worker is going to be working in an area where there is an electric power circuit, there must be precautions taken and the power circuit deenergized. Plaintiff insists that any question about his comparative fault does not prevent the Court from a finding that he is entitled to summary judgment as to liability on this claim.

In opposition, the Madison Defendants contend that their representative ("Nightingale") has policies in place to ensure it received written notices for requests to shut off power in the building. They insist that none of the contractors submitted these forms and so the power was not shut off. They also argue that their affirmative defenses that assert that plaintiff should have ensure that the electrician had properly turned off the power should not be dismissed.

**158495/2019   LOPEZ, LEONEL vs. NG 645 MADISON AVE LLC**
**Motion No.  001 002 003 004**

**Page 5 of 13**

5 of 13

In reply, plaintiff emphasizes that the Madison Defendants appear to blame others for the accident but that the Labor Law requires them, as owners of the building, to ensure that proper safety requirements were followed.

"The duty to comply with the Commissioner's safety rules, which are set out in the Industrial Code (12 NYCRR), is nondelegable. In order to support a claim under section 241(6). . . the particular provision relied upon by a plaintiff must mandate compliance with concrete specifications and not simply declare general safety standards or reiterate common-law principles" (*Misicki v Caradonna*, 12 NY3d 511, 515, 882 NYS2d 375 [2009]). "The regulation must also be applicable to the facts and be the proximate cause of the plaintiff's injury" *(Buckley v Columbia Grammar and Preparatory*, 44 AD3d 263, 271, 841 NYS2d 249 [1st Dept 2007]).

"Section 241(6) subjects owners and contractors to liability for failing to adhere to required safety standards whether or not they themselves are negligent. Supervision of the work, control of the worksite, or actual or constructive notice of a violation of the Industrial Code are not necessary to impose vicarious liability against owners and general contractors, so long as some actor in the construction chain was negligent" (*Leonard v City of New York*, 216 AD3d 51, 55-56, 188 NYS3d 471 [1st Dept 2023]).

The Industrial Code Sections cited by plaintiff are :

"(3) Investigation and warning. Before work is begun the employer shall ascertain by inquiry or direct observation, or by instruments, whether any part of an electric power circuit, exposed or concealed, is so located that the performance of the work may bring any person, tool or machine into physical or electrical contact therewith. The employer shall post and maintain proper warning signs where such a circuit exists. He shall advise his employees of the locations of such lines, the hazards involved and the protective measures to be taken.

(4) Protection of employees. No employer shall suffer or permit an employee to work in such proximity to any part of an electric power circuit that he may contact such circuit in the course of his work unless the employee is protected against electric shock by de-energizing the circuit and grounding it or by guarding such

**158495/2019   LOPEZ, LEONEL vs. NG 645 MADISON AVE LLC**
**Motion No.  001 002 003 004**

**Page 6 of 13**

6 of 13

[* 6]

circuit by effective insulation or other means. In work areas where the exact locations of underground electric power lines are unknown, persons using jack hammers, bars or other hand tools which may contact such power lines shall be provided with insulated protective gloves, body aprons and footwear. (12 NYCRR § 23-1.13[b]).

There is no doubt that neither of these code sections were complied with by anyone. There were no warnings and the circuit was certainly not deenergized. Instead, the Madison Defendants contend that they are not liable because other contractors failed to comply with their internal processes regarding electric shut offs. But, as noted above in *Leonard*, it does not matter whether or not the Madison Defendants were negligent as long as someone on the site was negligent. And, here, no one checked to ensure that the metal tray plaintiff was told to cut into was deenergized, which entitles plaintiff to summary judgment as to liability. Someone (the Court makes no specific finding as to which entity is ultimately responsible in this motion) should have recognized the metal piece was an electrical bus and ensured it was deenergized.

The Court also severs and dismisses the Madison Defendants' affirmative defenses related to comparative negligence. Although dismissal of these defenses is not required in order to grant summary judgment as to liability, the Madison Defendants failed to raise an issue of fact as to how plaintiff could be negligent. He was undoubtedly a laborer; it was not his responsibility to check whether or not the power was off. That responsibility was, as a matter of law, on other entities. Plaintiff simply did what he was told.

**MS003**

In this motion, Real Plumbing moves for summary judgment dismissing the third-party complaint filed by the Madison Defendants. It claims it had no part in plaintiff's accident, that it did not perform any electrical or demolition work, and that plaintiff worked exclusively for

**158495/2019   LOPEZ, LEONEL vs. NG 645 MADISON AVE LLC**
**Motion No.  001 002 003 004**

**Page 7 of 13**

7 of 13

[* 7]

Vanguard. Real Plumbing maintains that it entered into a contract with Vanguard to do plumbing work.

In opposition, the Madison Defendants contend that because the accident arose out of the work of Real Plumbing by improperly failing to mark the areas to be demolished, they are entitled to contractual indemnity from Real Plumbing and their claims against this entity should not be dismissed. They also claim there is an issue of fact with respect to their claims for common law indemnification against Real Plumbing. The Madison Defendants also claim that Real Plumbing did not show that it procured insurance as required under Real Plumbing's contract with Vanguard.

Zerem also submits opposition and argues that it was Real Plumbing that marked the areas to be demolished in order for its anchors to be installed.

In reply, Real Plumbing insists that it did not make any marks on the ceiling where plaintiff was working to clear debris. It insists it made markings on the floor. And it attached the insurance policy it obtained to justify dismissal of the breach of contract for failure to procure insurance claim. Real Plumbing also argues that there is no contractual indemnity with the Madison Defendants because the contract was with Vanguard.

The central question on this motion is a theory under which Real Plumbing could be held liable under theories of contractual indemnity or common law indemnification. The Court finds that Real Plumbing established as a matter of law that it is not negligent and grants its motion. The Court reaches this conclusion, mainly, on the ground that Real Plumbing was not tasked with performing the demolition (that was Vanguard, plaintiff's employer) nor was it responsible for turning off the electricity.

**158495/2019  LOPEZ, LEONEL vs. NG 645 MADISON AVE LLC**
**Motion No.  001 002 003 004**

**Page 8 of 13**

8 of 13

Instead, the record shows that while the work was being performed so that Real Plumbing could do its work related to sprinkler installation, it was plaintiff's foreman who supervised plaintiff's work and other entities that may have been responsible for ensuring the electricity was turned off. As plaintiff noted at his deposition "Every time we do demolition in certain areas in the floor the buildings, one day before, the plumbing company goes and makes sure all the parts are shut down to avoid a flood, and the electricians kill all the power to the lights and the outlets so when the a [sic] demo crew starts doing the demo, they don't run into any accidents" (NYSCEF Doc. No. 82). Nothing in Real Plumbing's contract or in this record suggests they had any duty with respect to demolition or electricity such that they could be held liable here.

The issue of the markings, in this Court's view, is immaterial. Real Plumbing merely told plaintiff's foreman (Steve) which places they needed to be cleared. And plaintiff testified that it was "just Steve" who told him to remove what was in the path and that Steve walked around the path telling plaintiff what to remove (*id*. at 38-39). Plaintiff emphasized that no one from Real Plumbing pointed out things for him to remove (*id*.). And, critically, it was Steve who looked at the tray to see if it had any cables attached (*id*. at 41); the tray that turned out to be the electrical bus that electrocuted plaintiff. There was no testimony that Real Plumbing ever made any representations about the safety of cutting into the metal tray.

Therefore, all claims and cross-claims against this third-party defendant, Real Plumbing, are severed and dismissed.

**MS004**

The Madison Defendants seek summary judgment dismissing plaintiff's Labor Law § 200 claim, dismissing his Labor Law § 241(6) claim and relief granting them summary judgment against Real Plumbing as well as against Zerem.

**158495/2019   LOPEZ, LEONEL vs. NG 645 MADISON AVE LLC**
**Motion No.  001 002 003 004**

**Page 9 of 13**

9 of 13

[* 9]

With respect to the Labor Law § 200 claim, the Madison Defendants claim that they did not control the means or methods of plaintiff's work. They emphasize that plaintiff testified that he took instructions from his supervisor. They claim that they had no actual or constructive notice of the allegedly dangerous condition (the energized electric bus). The Madison Defendants blame Zerem for not turning off the power.

Plaintiff contends that the Madison Defendants failed to meet their burden when the area was last inspected and so they are not entitled to summary judgment on their Labor Law § 200 claim.

Zerem files opposition and emphasizes that no one ever told it to turn off the electricity.

As a preliminary matter, the Court observes that it awarded summary judgment to plaintiff on his Labor Law § 241(6) claim and to Real Plumbing earlier in this decision. Therefore, the Court need not address those portions of the Madison Defendants' motion here.

With respect to Labor Law § 241(6), the Court observes that the Madison Defendants moved for summary judgment dismissing certain Industrial Code sections not discussed above. These include 23-1.13 (b) (1), (2), (5) and (8), 23-1.13(c)(1)(i) and (ii).

Although plaintiff's opposition mentions 23-1.13(b)(2), which concerns a determination about voltage levels, he did not substantively oppose this branch of the motion and so the claim regarding this Industrial Code section is therefore dismissed. Instead, plaintiff insists that the Madison Defendants did not meet their burden on this section. However, the record is clear that there was nothing raised about determining the voltage levels or how that relates to plaintiff's accident.

The only other Industrial Code section plaintiff discusses is 23-1.13(b)(1), which provides that "(1) Precautions. All power lines and power facilities around or near construction,

**158495/2019  LOPEZ, LEONEL vs. NG 645 MADISON AVE LLC**
**Motion No.  001 002 003 004**

**Page 10 of 13**

[* 10]

demolition and excavation sites shall be considered as energized until assurance has been given that they are otherwise by qualified representatives of the owners of such power lines or power facilities." The Court declines to dismiss plaintiff's claim based on this Industrial Code section as the Madison Defendants simply claim they never received written notice to turn off the electricity. But this section mentions nothing about having to receive written notice.

The remaining Industrial Code section are therefore dismissed as unopposed.

Turning to plaintiff's Labor Law § 200 claim, the Court observes that Labor Law § 200 "codifies landowners' and general contractors' common-law duty to maintain a safe workplace" (*Ross v Curtis-Palmer Hydro-Electric Co.*, 81 NY3d 494, 505, 601 NYS2d 49 [1993]). "[R]ecovery against the owner or general contractor cannot be had unless it is shown that the party to be charged exercised some supervisory control over the operation . . . [A]n owner or general contractor should not be held responsible for the negligent acts of others over whom the owner or general contractor had no direction or control" (*id.* [internal quotations and citation omitted]).

"Claims for personal injury under this statute and the common law fall under two broad categories: those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed" (*Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 143-44, 950 NYS2d 35 [1st Dept 2012]). "Where an existing defect or dangerous condition caused the injury, liability attaches if the owner or general contractor created the condition or had actual or constructive notice of it" (*id.* at 144).

Based on this record, the Court grants the branch of the Madison Defendants' motion that sought to dismiss the section 200 claim. There is no dispute that plaintiff's supervisor controlled the means and methods of his work. Plaintiff's deposition testimony is replete with how he

**158495/2019   LOPEZ, LEONEL vs. NG 645 MADISON AVE LLC**
**Motion No.  001 002 003 004**

**Page 11 of 13**

11 of 13

[* 11]

simply followed his supervisor's instructions. There was no testimony that the Madison Defendants controlled the means and methods of plaintiff's work.

With respect to the notice issue, the Court finds that it does not compel a different outcome. This case is not about an inherently dangerous or defective condition on the premises. It is about the means and methods for performing the work under the Labor Law. Plaintiff was hurt because someone, it is unclear who was ultimately responsible, forgot to turn off the power to the electric bus. That type of condition is not inherently dangerous; it only became a danger because of the nature of plaintiff's task (i.e., the means and methods of his work). Simply running electricity in a building is not dangerous. This is not a situation, such as the one cited by plaintiff in opposition, where an injured worker stepped into a gap between the entrance to a catwalk and the catwalk itself (*Urban v No. 5 Times Sq. Dev., LLC*, 62 AD3d 553, 554, 879 NYS2d 122 [1st Dept 2009]).

However, the Court denies the motion with respect to request relief against Zerem. The fact is that plaintiff's supervisor testified that he could not recall having any discussions with Zerem about the subject tray and that he was not aware of someone from Zerem being asked to inspect the area prior to plaintiff starting his work (NYSCEF Doc. No. 87 at 92-93). Therefore, the Court is unable to find that Zerem must indemnify the Madison Defendants as a matter of law. If a fact finder believes Zerem that it was not obligated to do anything with respect to the electricity on that floor (i.e., that it was outside the scope of its contract), then a fact finder might find that no cause of action lies against Zerem.

Accordingly, it is hereby

ORDERED that third-party defendant Zerem Electric Corp.'s motion (MS001) for summary judgment is denied; and it is further

**158495/2019  LOPEZ, LEONEL vs. NG 645 MADISON AVE LLC**
**Motion No.  001 002 003 004**

**Page 12 of 13**

ORDERED that Plaintiff's motion (MS002) for partial summary judgment under Labor Law § 241(6) and to dismiss affirmative defenses alleging culpable conduct is granted as to liability only; and it is further

ORDERED that third-party defendant Real Plumbing Corp.'s motion (MS003) for summary judgment is granted to the extent that all claims and crossclaims against this defendant are severed and dismissed; and it is further

ORDERED that defendants NG 645 Madison Ave LLC and BLR Madison LLC's motion (MS004) for summary judgment is granted only to the extent that plaintiff's Labor Law § 200 claim and his Labor Law 241(6) claim based upon ONLY Industrial Code Sections 23-1.13 (b) (2), (5) and (8) and 23-1.13(c)(1)(i) and (ii) are severed and dismissed and denied with respect to the remaining requests for relief.

**3/13/2024**
**DATE**

**ARLENE P. BLUTH, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION |
| --- | --- | --- | --- | --- |
| | GRANTED | DENIED | GRANTED IN PART | X OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**158495/2019   LOPEZ, LEONEL vs. NG 645 MADISON AVE LLC**
**Motion No.  001 002 003 004**

**Page 13 of 13**

13 of 13

[* 13]