| **Rumpilla v 11 Hoyt Prop. Owner, L.P.** |
|---|
| 2024 NY Slip Op 33159(U) |
| September 10, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 157345/2019 |
| Judge: Paul A. Goetz |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| PRESENT: **HON. PAUL A. GOETZ** | PART 47 |
| *Justice* | |

-------------------------------------------------------------------------------X

JULIO ARTURO DUTAN RUMPILLA,

Plaintiff,

- v -

11 HOYT PROPERTY OWNER, L.P., TRITON
CONSTRUCTION COMPANY LLC

Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 157345/2019 |
| MOTION DATE | 05/03/2024 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

In this Labor Law action to recover damages for personal injuries allegedly sustained by a carpenter on July 16, 2019, when, while working at a construction site located at 11 Hoyt Street, Brooklyn, NY 11201 (the premises) heavy metal sheets fell on him, defendants 11 Hoyt Property Owner LP (11 Hoyt) and Triton Construction Company LLC (Triton) move, pursuant to CPLR § 3212, for summary judgment dismissing plaintiff Julio Arturo Dutan Rumpilla's complaint.

## BACKGROUND

11 Hoyt owns the premises, where plaintiff's accident occurred (NYSCEF Doc No 1 ¶ 17). 11 Hoyt hired Triton as the general contractor to construct a new mixed-use commercial / residential / retail building on the premises (*id.* ¶ 25). Triton then hired non-party Cassway Contracting Corp (Cassway) as a subcontractor to perform certain drywall and carpentry work (NYSCEF Doc No 68). Plaintiff was employed by Cassway as a carpenter, framing walls, ceilings, and doors with metal (NYSCEF Doc No 63, 22:14-23:4, 35:9-36:9).

**157345/2019  DUTAN RUMPILLA, JULIO ARTURO vs. 11 HOYT PROPERTY OWNER, L.P.**          **Page 1 of 11**
  **Motion No.  002**

At around 6:30 am on July 16, 2019, plaintiff arrived at the premises, where he had been working for approximately seven months (*id.*, 34:25-35:7, 39:13-16). At around 2:00 pm, plaintiff was instructed, along with five of coworkers, by Patrick (last name unknown), a foreman for Cassway, to remove metal sheets—each 8 feet long, 4 feet wide, and about 100 pounds—from the elevator shaft walls on the 37th floor of the building (*id.*, 37:6-11, 41:17-42:25, 43:25-44:13). To do this, the workers removed the screws holding the metal sheets in place, pulled the sheets away from the wall, and one by one moved them onto an A-frame cart[1] such that they leaned against the cart's side support bar (*id.*, 45:3-48:17).

After six metal sheets were loaded into the cart, plaintiff and his coworkers started to push the cart down the corridor (*id.*, 58:12-59:24). Plaintiff states that along the way, "the front tire on the right-hand side got stuck or locked" because it hit a raised part of the flooring,[2] causing "the back part of the cart [] to move towards the left-hand side," and the cart tilted and fell on top of plaintiff (*id.*, 62:17-64:4). Plaintiff was knocked down on his back and the metal sheets slid from the cart and fell onto his left leg and foot, causing injury (*id.*, 75:2-25). Plaintiff testified that Patrick quickly moved plaintiff away from where the accident occurred so that he would not be seen by the safety officer, and when plaintiff requested an ambulance, Patrick threatened to "call immigration" on him (*id.*, 82:16-84:24).

One of plaintiff's coworkers, Angel Tene, did not observe the accident, but approached plaintiff immediately afterward (NYSCEF Doc No 71).[3] Tene represents that he did not see a toppled cart, there were "no signs of injury to either [plaintiff's] foot or leg," and plaintiff "said

---

[1] Plaintiff states that he complained to Patrick about the condition of the cart several days before this incident, and in the morning and afternoon of July 16, 2019, because it was "pretty old" and "the wheels [] were not [] functioning well," to which Patrick responded that "he was going to [get] someone to check those tires" (*id.*, 66:5-69:25).
[2] Plaintiff testifies that the cart "was hitting those parts of the floor that are somewhat elevated," explaining that "the floor is made out of concrete, so . . . it is a little uphill, downhill. It is not completely leveled" (*id.*, 63:20-64:2).
[3] Defendants apparently intended to include a witness statement from another coworker named Miguel Guapinaula, but instead submitted two copies of Tene's statement (NYSCEF Doc Nos 71-72).

[* 2]

he was ok and did not want an ambulance" (*id.*). Tene also noted that plaintiff "had been limping for a few months before due to foot problems" (*id.*). At his deposition, plaintiff acknowledged that he had to take two weeks off work when "a window fell on [his] foot" in 2017 but states that he did not have a limp prior to his July 16, 2019 accident (NYSCEF Doc No 63, 78:7-80:5).

Plaintiff's causes of action are for common law negligence and violations of Labor Law §§ 240(1), 200, and 241(6) (NYSCEF Doc No 1). Defendants deny liability on various grounds and dispute whether the accident even occurred, asserting that plaintiff did not notify his employer of the accident (and therefore no report was created); plaintiff's version of events conflicts with the witness statements of his coworkers; and though plaintiff visited Elmhurst Hospital later that day, he reported that he sustained his injuries in a car accident (NYSCEF Doc No 57). Plaintiff responds that these discrepancies are due to Patrick's threat to report him to immigration authorities, which scared plaintiff and led him to hide his injuries or attribute them to other causes (NYSCEF Doc No 74).

## DISCUSSION

"It is well settled that 'the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact.'" (*Pullman v Silverman*, 28 NY3d 1060, 1062 [2016], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers." (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985] [internal citations omitted]). "Once such a prima facie showing has been made, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to raise material

issues of fact which require a trial of the action." (*Cabrera v Rodriguez*, 72 AD3d 553, 553-554 [1st Dept 2010], citing *Alvarez*, 68 NY2d at 342).

"The court's function on a motion for summary judgment is merely to determine if any triable issues exist, not to determine the merits of any such issues or to assess credibility." (*Meridian Mgmt. Corp. v Cristi Cleaning Serv. Corp.*, 70 AD3d 508, 510-511 [1st Dept 2010] [internal citations omitted]). The evidence presented in a summary judgment motion must be examined "in the light most favorable to the non-moving party" (*Schmidt v One New York Plaza Co.*, 153 AD3d 427, 428 [2017], quoting *Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 339 [2011]) and bare allegations or conclusory assertions are insufficient to create genuine issues of fact (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (*id.*).

    i.     *Labor Law § 200 and Common Law Negligence*

Labor Law § 200 "is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work" (*Singh v Black Diamonds LLC*, 24 AD3d 138, 139 [1st Dept 2005], citing *Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993]). It provides that worksites "shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places" (Labor Law § 200[1]). Cases involving Labor Law § 200 fall into two broad categories: namely, those where workers are injured as a result of dangerous or defective premises conditions at a worksite, and those involving the manner in which the work is performed" (*Ortega v Puccia*, 57 AD3d 54, 61 [2nd Dept 2008]). "Where a premises condition is at issue, property owners may be held liable for a violation of Labor Law § 200 if the owner either created the dangerous condition that

[* 4]

caused the accident or had actual or constructive notice of the dangerous condition that caused the accident" (*id*.). In contrast, where the manner of work is concerned, "recovery against the owner or general contractor cannot be had . . . unless it is shown that the party to be charged had the authority to supervise or control the performance of the work" (*id*.). Further, "no liability will attach to the owner solely because it may have had notice of the allegedly unsafe manner in which work was performed" (*Dennis v City of New York*, 304 AD2d 611, 611 [2nd Dept 2003]).

Defendants move for summary judgment dismissing plaintiff's negligence and Labor Law § 200 causes of action, arguing that they did not supervise or control the means and methods of plaintiff's work, which was directed by his employer, Cassway (NYSCEF Doc No 57). Plaintiff does not dispute that defendants did not exercise control over his work, however, he argues that they may still be held liable because plaintiff's injury arose from an alleged defect or dangerous condition on the premises (NYSCEF Doc No 74; *Ortega*, 57 AD3d at 61), namely, the allegedly "un-level floor" (NYSCEF Doc No 74 [identifying the "un-level floor" as "the specific defect that is being claimed," rather than the cart itself]). Plaintiff argues that defendants' motion must be denied because they failed to demonstrate their lack of actual or constructive notice of this defect. Defendants argue that the alleged uneven flooring is not a specific dangerous condition for which they can be held liable, and in any event, they lacked notice.

In *Haynie v New York City Hous. Auth.*, 95 AD3d 594, 594 [1st Dept 2012], where "Plaintiff allege[d] that his trip and fall accident was caused by a dangerous condition on a pathway to the backyard of defendant's premises[, i.e., the] large chunks of concrete that plaintiff knowingly traversed while carrying a 28-foot, 40- to 50-pound ladder," the First Department held that the condition on the pathway "was not a dangerous condition as a matter of law," as "plaintiff testified that he knew he had to step on the concrete chunks in order to enter the

[* 5]

backyard" (*id.* at 594-95; also citing *McGrath v Lake Tree Village Assoc.*, 216 AD2d 877 [1995] [court found property owner not liable for a dangerous condition where the plaintiff was injured when he walked on a pile of dirt while carrying a 24-foot scaffold pick on his shoulder]). Similarly, here, plaintiff was aware that he was traversing unlevel concrete flooring. Though plaintiff's opposition focuses solely on the unlevel flooring, his testimony indicates that his "accident arose out of the manner and means of his work, to wit the use and alleged inadequacy of the cart used, not a dangerous condition on the premises" (*Taopanta v 1211 6th Ave. Prop. Owner, LLC*, 2021 NY Slip Op 33665[U] *4 [SC NY Co, 2021]; *Lopez v NG 645 Madison Ave. LLC*, 2024 NY Slip Op 30804[U] *12 [SC NY Co, 2024] [condition "only became a danger because of the nature of plaintiff's task (i.e., the means and methods of his work)"]; *Schelmety v Skanska USA Inc.*, 2018 NY Slip Op 32087[U] *3 [SC NY Co, 2018] ["the pile of dirt that plaintiff traversed was not a dangerous condition as a matter of law"]).

Having demonstrated that plaintiff's injury arose from the manner in which he performed the work, rather than from a dangerous condition or defect on the premises, defendants were required to demonstrate that they lacked supervisory authority or control over plaintiff's work (*Goodwin v Comcast Corp.*, 42 AD3d 322, 323 [1st Dept 2007]). They have done so by submitting evidence demonstrating that only Cassway and its employees (e.g., Patrick) had control over the means and methods of plaintiff's work at the premises (NYSCEF Doc No 63, 37:3-38:20 [plaintiff testified that Patrick, a foreman for Cassway, was the only person to direct his work], 147:9-15 [Triton was not onsite]). Plaintiff did not dispute this in his opposition. Accordingly, the part of defendants' motion seeking summary judgment dismissing plaintiff's Labor Law § 200 and common law negligence claims will be granted.

### ii. Labor Law § 240(1)

Labor Law § 240 (1), also known as New York's "Scaffold Law," provides that all general contractors and owners "shall furnish or erect, or cause to be furnished or erected for the performance of [construction] labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed." Labor Law § 240 (1) "imposes absolute liability on building owners and contractors whose failure to provide proper protection to workers employed on a construction site proximately causes injury to a worker" (*Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 7 [2011] [internal quotation marks and citation omitted]). To prevail on a Labor Law § 240 (1) cause of action, the plaintiff must establish that the statute was violated, and that the violation was a proximate cause of his or her injuries (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 287-289 [2003]). "[T]he single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]).

The legislative intent behind the statute is to place "ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor, instead of on workers, who are scarcely in a position to protect themselves from accident" (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520 [1985], *rearg denied* 65 NY2d 1054 [1985] [internal quotation marks and citations omitted]). Therefore, the statute should be liberally construed to achieve the purpose for which it was framed (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]).

[* 7]

Defendants argue that the protections of Labor Law § 240(1) do not apply here because plaintiff did not fall from a height, nor can the metal sheets be considered a "falling object" within the meaning of the statute (NYSCEF Doc No 57). Defendants note that when asked: "Did you need to secure the metal sheets in any way prior to moving the cart?" plaintiff answered "No" (NYSCEF Doc No 63, 59:13-15), and asserts that the cart was not being "hoisted or secured" when it allegedly fell over. Plaintiff argues that the cart required securing to prevent it from tipping due to the weight of the heavy materials it carried, especially when combined with the uneven flooring, and that it was this failure to secure the cart that caused plaintiff's injury.

Plaintiff relies on *Touray v HFZ 11 Beach St. LLC*, 180 AD3d 307 [1st Dept 2020], which presents virtually identical facts: plaintiff and his coworkers were moving an A-frame cart loaded with cement boards—each 8 feet long, 4 feet wide, and about 100 pounds—when its wheel became stuck. "Plaintiff and his coworkers then pushed and pulled the cart to free it, and, in the process, the cart and the boards suddenly tipped, with the boards landing on plaintiff's left leg" (*id.* at 507). The court held that "[g]iven the weight and height of the cement boards on the A-frame cart, the elevation differential was within the purview of the statute" (*id.*; *Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 605 [2009] [the court must consider "the weight of the object and the amount of force [the object is] capable of generating, even over the course of a relatively short descent"]). Here, defendants failed to eliminate issues of fact "regarding the cumulative weight of the [metal] sheets that fell on plaintiff from an A-frame cart after it toppled when its wheel was caught in a gap in the ramp structure as workers were wheeling it" (*Bain v 50 W. Dev., LLC*, 191 AD3d 496, 497 [1st Dept 2021]). Labor Law § 240(1) thus covers plaintiff's accident, which was proximately caused by the failure to secure the cart from the risk of tipping when used as intended (i.e., to transport heavy construction materials).

Additionally, that plaintiff testified that the sheets did not need to be secured does not dispense with defendants' statutory obligations. Nor do the inconsistencies of witness statements eliminate questions of fact; rather, they raise credibility issues that cannot be determined on a motion for summary judgment (*Srica v American Builtrite Inc.*, 2019 NY Slip Op 31045[U], *5 [SC NY Co 2019] ["Conflicting testimony raises credibility issues that cannot be resolved on papers and is a basis to deny summary judgment"]).

Accordingly, the part of defendants' motion seeking summary judgment dismissing plaintiff's Labor Law § 240(1) cause of action will be denied.

iii.    *Labor Law § 241(6)*

Labor Law § 241(6) provides that "[a]ll areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places." The obligations imposed under Labor Law § 241 are non-delegable, meaning that once a plaintiff has established a violation, he need not demonstrate that the owner or general contractor exercised supervision or control over the worksite (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 502 [1993]). In order to state a viable Labor Law § 241 claim, a plaintiff must allege that the defendant violated a specific standard of conduct under the Industrial Code (*Toussaint v Port Auth. of N.Y.*, 38 NY3d 89, 94 [2022]).

Plaintiff first alleges that defendants violated 12 NYCRR § 23-1.28(b) on "hand propellers," which provides that "[w]heels of hand-propelled vehicles shall be maintained free-running and well secured to the frames of the vehicles." Plaintiff relies on *Picchione v Sweet Constr. Corp.*, 60 AD 3d 510 [1st Dept 2009], in which the plaintiff sustained a back injury when

pushing a "loaded equipment cart along a hallway at the site [and] a wheel caught in a groove in the unfinished floor and broke, causing the cart to tip over" (*id.* at 511). The court determined that defendants could not be granted summary judgment dismissing Labor Law § 241 claim because they "failed to carry their burden as movants to show that the wheel was not defective" (*id.* at 512). Defendants attempt to distinguish this case by noting that in *Picchione*, the defendants caused damage to the floor on which the wheel was caught, whereas here, there was nothing defective about the floor. This distinction is irrelevant, as the court made its determination based on the inadequacy of the cart itself. Here, just as in *Picchione*, defendants failed to establish that the cart's wheels were "free-running and well secured" as required by the statute, and this was the cause of plaintiff's accident as he alleges it. Therefore, plaintiff may base his Labor Law § 241 cause of action in the alleged violation of 12 NYCRR § 23-1.28(b).

Plaintiff also alleges that defendants violated 12 NYCRR § 23-1.7(e)(1) on "protection from general hazards," which provides that "[a]ll passageways shall be kept free from . . . obstructions or conditions which could cause tripping." Plaintiff argues that this section is applicable because the cart's wheel became stuck when it hit an uneven part of the flooring, which then caused it to tip over. Plaintiff again relies on *Picchione*, where the court found that the wheel was caught on "defects in the raw floor" (*id.*). Defendants raise the same distinction as above, but with regard to this section, it is relevant; in *Picchione*, the floor was allegedly in a dangerous condition, which was also the basis of the violation, whereas here, the uneven flooring is not considered a "dangerous condition" in and of itself. Nevertheless, defendants have not eliminated all issues of fact as to whether the condition of the floor could cause tripping when combined with other factors such as the allegedly defective cart. Therefore, plaintiff may also base his Labor Law § 241 cause of action in the alleged violation of 12 NYCRR § 23-1.7(e)(1).

[* 10]

Accordingly, the part of defendants' motion seeking summary judgment dismissing plaintiff's Labor Law § 241(6) cause of action will be denied.

## CONCLUSION

Based on the foregoing, it is

ORDERED that defendants' motion seeking summary judgment dismissing plaintiff's complaint is granted to the extent that plaintiff's common law negligence and Labor Law § 200 causes of action are dismissed and is otherwise denied.

20240910150429PG0ETZ1680E6E0DF5474892654EBD31040A0645

| 9/10/2024 | | | | |
|---|---|---|---|---|
| **DATE** | | | | **PAUL A. GOETZ, J.S.C.** |
| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION |
| | | GRANTED | DENIED X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

[* 11]